709 A.2d 1353

JAMIE EPSTEIN, PLAINTIFF–APPELLANT, v. STATE OF NEW JERSEY, COUNTY OF CAMDEN, CITY OF CAMDEN, AND TOWN OF HAMMONTON, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 24, 1998—Decided May 12, 1998.

Before Judges STERN, KLEINER and KIMMELMAN.

*Stephen Cristal,* argued the cause for appellant (*Mark J. Molz,* attorney; *Mr. Cristal,* on the brief).

*Valerie L. Egar,* Deputy Attorney General, argued the cause for respondent State of New Jersey (*Peter Verniero,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Ms. Egar,* on the brief).

*M. Lou Garty,* Assistant County Counsel, argued the cause for respondent County of Camden (*Robert G. Millenky,* County Counsel, attorney; *Ms. Garty,* on the brief).

*Elizabeth F. Casey,* argued the cause for respondent Town of Hammonton (*Powell, Birchmeier, Berger & Powell,* attorneys; *Donald A. Powell,* on the brief).

The opinion of the court was delivered by

KIMMELMAN, J.A.D.

This appeal concerns two issues arising under the notice provisions of the Tort Claims Act (the Act), *N.J.S.A.* 59:8–1 to –11: (1) whether a notice of tort claim served upon the Attorney General is sufficient to alert local public entities to the same claim; and (2) whether the observance of the Jewish religious day of Yom Kippur excuses the late filing of a notice of tort claim.

Plaintiff Jamie Epstein appeals from the denial of his application for permission to file a late notice of tort claim, pursuant to *N.J.S.A.* 59:8–9, against defendants the State of New Jersey, the County of Camden, the City of Camden,[1] and the Town of Hammonton. The trial court concluded that plaintiff had failed to make a showing of extraordinary circumstances to excuse his failure to file, and further concluded that plaintiff's three and one-half month delay in seeking permission to file late constituted an "unexplained lack of diligence."[2] We affirm.

I

Plaintiff proposes an action for damages for malicious prosecution, libel, slander, defamation of character, and emotional distress arising out of certain facts, which we purposely set forth very generally because of their sensitive nature. On May 25, 1995, and again in September of 1995, plaintiff was arrested and charged

---

[1] The City of Camden did not respond to plaintiff's motion and has not participated in this appeal.

[2] Plaintiff's notice was rejected as untimely by the State on October 4, 1996. Plaintiff's application to file a late notice of claim was not made until January 21, 1997.

with assault and endangering the welfare of children; his own and a child of his girlfriend. The Hammonton Police Department is alleged to have participated in plaintiff's initial arrest on a complaint from his ex-wife. The allegations resulting in the charges against plaintiff were reported to the Division of Youth and Family Services (DYFS) which, in turn, reported the matter to the office of the Prosecutor of Camden County, as it was authorized by law to do. *See N.J.S.A.* 9:6–8.10a(b)(2). The Prosecutor's office also caused an arrest of plaintiff.

Some months later, in early May 1996, in open court and in the presence of plaintiff's then-attorney, the Camden County Prosecutor announced that all charges against plaintiff were being dismissed for lack of credible evidence. On June 4, 1996, DYFS mailed a letter to plaintiff, advising him that the case concerning the alleged assault on the children had been closed since October 4, 1995. By letter dated June 24, 1996, the Camden County Prosecutor formally notified plaintiff that the charges against him had been "administratively dismissed" on that date.

## II

It is not necessary for us to decide whether plaintiff's cause of action, if any, accrued on the date of his arrest or at any other time prior to the sending of the June 24, 1996, letter from the Prosecutor confirming the administrative dismissal. Plaintiff takes the position that his alleged cause of action did not begin to accrue until he had notice that all charges were terminated in his favor and that his notice of claim was therefore timely filed. He relies upon *The Penwag Property Co., Inc. v. Landau,* 76 *N.J.* 595, 598, 388 *A.*2d 1265 (1978), which holds that a malicious prosecution suit may not be brought until the prosecution is terminated. In the notice of tort claim which plaintiff faxed to the Attorney General on September 24, 1996, it is apparent that plaintiff believed that his alleged cause of action accrued, at the latest, on June 24, 1996, since he fixed that as the outside date of the occurrences giving rise to his alleged cause of action. Nonethe-

less, plaintiff urges that, since he did not receive the Prosecutor's notice of administrative dismissal until June 28, 1996, the alleged cause of action did not begin to accrue until that date. The motion judge saw it differently, and concluded that the latest possible accrual date was June 24, 1996. He calculated the statutory ninety-day deadline to run from that date. We agree with that determination. The Prosecutor's administrative dismissal letter merely confirmed facts already known to plaintiff. There is no sound reason to fix the accrual date after June 24, 1996.[3]

## III

Initially, we observe that no notice of tort claim was ever served on the County of Camden. The Act provides that "[n]o action shall be brought against a public entity ... unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." *N.J.S.A.* 59:8–3. The claim must be filed not later than the ninetieth day after the accrual of the cause of action, *N.J.S.A.* 59:8–8, and must contain the following information: (1) the name and address of the claimant and the address(es) to which notice should be sent; (2) the date, location, and circumstances of the occurrence or transaction which gave rise to the claim; (3) a description of the injury or damages claimed; (4) the name(s) of the public entity or employee involved; and (5) the amount claimed. *N.J.S.A.* 59:8–4. The "claim shall be signed," *N.J.S.A.* 59:8–5, and "shall be filed with [the local public] entity," *N.J.S.A.* 59:8–7.

---

[3] Plaintiff's claim against the State is premised upon the conduct of DYFS. The claim against the other defendants is based upon their prior conduct and reports to DYFS. However, plaintiff was advised by letter dated June 4, 1996, that DYFS had closed the case. Ninety days from that date was September 2, 1996.

The claim against the County was based on the prosecutor's conduct, but even if the ninety-day period did not begin to run as to him until June 24, 1996, (and assuming that the County would be responsible, *see e.g., Cashen v. Spann*, 66 *N.J.* 541, 552, 334 *A.2d* 8 (1975)), no notice was given to the County until the motion to permit the late filing was itself filed.

■ Plaintiff made statements in court regarding his possible intention to sue, and made additional comments in a letter to the New Jersey Board of Psychological Examiners in which he complained about the ethics of a psychologist who participated in the DYFS investigation. That letter was copied to the Camden County Prosecutor. We find no merit in plaintiff's contention that his statements in court and the letter to an unrelated party were in substantial compliance with the Act's requirement that the County be placed on notice separately. *Cf. Small v. Department of Corrections*, 243 *N.J.Super.* 439, 446–47, 579 *A.*2d 1263 (App. Div.1990) (finding substantial compliance with *N.J.S.A.* 59:8–4 where plaintiff's counsel wrote to public entity two days after accrual, supplying all of the required information except the amount claimed, which could not have been ascertained at that time).

■ Similarly, no notice of claim was ever served upon Hammonton or upon the City of Camden. Plaintiff contends that notice to the Attorney General constitutes notice to Hammonton and to the City of Camden. However, *N.J.S.A.* 59:8–2 and –10 make a clear distinction between a local public entity and the State. The Attorney General may receive a notice of claim against the State, but notice to the Attorney General is not tantamount to actual or constructive notice to a local public entity. *See N.J.S.A.* 59:8–10. The Legislature has clearly expressed that: "A claim for … damages … against a local public entity shall be filed with that entity." *N.J.S.A.* 59:8–7.

■ As noted by the motion judge, plaintiff waited more than three months following receipt of the rejection notice sent by the State on October 4, 1996, before seeking permission to file a late notice of claim. In the words of the motion judge, this constituted "an unexplained lack of diligence;" implying that plaintiff's application for permission to file a late notice of claim was not made "within a reasonable time" after the rejection of his initial late notice. *N.J.S.A.* 59:8–9; *see Wood v. County of Burlington*, 302 *N.J.Super.* 371, 380, 695 *A.*2d 377 (App.Div.1997) (reversing grant

of leave to file late notice of claim where plaintiff failed to offer an explanation as to why he waited nine months before making an application for leave).

## IV

Plaintiff contends that there were facts constituting "extraordinary circumstances" under which the motion judge was authorized to grant him permission to file a late notice of claim pursuant to *N.J.S.A.* 59:8–9. The extraordinary circumstances are said to relate to the occurrence of the religious day of Yom Kippur. Thus, we are called upon to decide whether the occurrence of Yom Kippur on the ninetieth day after the accrual of a cause of action will excuse the failure to file a notice of tort claim on or before that day, as required by the Act, *N.J.S.A.* 59:8–8. The legal issue, succinctly stated, is whether a one-day late filing because of the Yom Kippur holiday constitutes "extraordinary circumstances" under *N.J.S.A.* 59:8–9.

The issue is presented in this context: Yom Kippur is the holiest of Jewish holidays. Plaintiff claims to be an observant member of the Jewish faith. He avers not to have engaged in any business transactions on Monday, September 23, 1996; which was both Yom Kippur and the terminal date from June 24, 1996, on which a notice of tort claim should have been received by the State. The notice of tort claim prepared by plaintiff was faxed to and received by the Attorney General's office on September 24, 1996, that is, the ninety-second day after accrual of the alleged cause of action. The State rejected the notice on October 4, 1996, as having been filed more than ninety days after the accrual of plaintiff's claim.

Plaintiff's notice of tort claim had listed May 25, 1995, to June 24, 1996, as the dates within which his allegedly tortious injury occurred. Ninety days from June 24, 1996, was September 22, 1996, but since that day fell on a Sunday, the court below properly regarded the next day, September 23, 1996, as the deadline for the filing of the notice. *See N.J.S.A.* 36:1–1. The motion judge held

that the notice faxed to the Attorney General on Tuesday, September 24, 1996, was one day late. Since plaintiff then waited more than three months after notification that his claim was late before seeking leave to file a late notice of claim, the court regarded this delay as an "unexplained lack of diligence" on plaintiff's part and further reason to deny the relief requested. *See Lamb v. Global Landfill Reclaiming*, 111 *N.J.* 134, 146, 543 *A.2d* 443 (1988) (grant or denial of leave to file late notice of claim under the Act is left to the sound discretion of the trial court).

## V

■ Yom Kippur is not one of the legal holidays recognized by *N.J.S.A.* 36:1–1. However, the statute does list Good Friday and Christmas, both of which have a significant Christian religious meaning. Obviously, the Legislature intended to draw a line limiting the number of religious days that would be recognized as legal holidays throughout the year. The fact that many religious days having significance to adherents of various faiths have not been designated as legal holidays does not, as plaintiff asserts, deny to those adherents the equal protection of the laws or effect a discrimination because of religious principles, contrary to *N.J. Const.* art. I, ¶ 5. *See State v. Fass*, 36 *N.J.* 102, 109, 175 *A.2d* 193 (1961) (Sunday closing law does not violate equal protection clause), *cert. denied*, 370 *U.S.* 47, 82 *S.Ct.* 1167, 8 *L. Ed.2d* 398 (1962); *see also Vornado, Inc. v. Hyland*, 77 *N.J.* 347, 358, 390 *A.2d* 606 (1978) (upholding Sunday closing law which proscribed only the sale of certain types of goods), *appeal dismissed*, 439 *U.S.* 1123, 99 *S.Ct.* 1037, 59 *L. Ed.2d* 84 (1979). *N.J.S.A.* 36:1–1 does not deny to anyone the right to observe any religious day of their choosing. The designation of one or more religious holidays as legal holidays is intended to be a non-discriminatory, secular decision on the Legislature's part. *See Fass, supra*, 36 *N.J.* at 108–09, 175 *A.2d* 193.

The coming of a holy day is known to an observant member of the faith involved. Whether an observant member will attend to

business affairs on that day is purely a personal decision. Reasonable advance planning is expected to be made by the religious observant for the managing of secular matters which might arise on a religious day.

Except as authorized by *N.J.S.A.* 36:1–1, or by any other statute, a legal deadline may not be extended. The Supreme Court has stated:

> [I]t is well settled in this State that where, by statute, an act is due arithmetically on a day which turns out to be a Sunday or legal holiday, it may be lawfully performed on the following day, and if that day be also a *dies non* on which the public offices are closed to the transaction of business, according to the "holiday acts," *supra*, a similar rule applies.
>
> [*Poetz v. Mix*, 7 N.J. 436, 445–46, 81 A.2d 741 (1951).]

We cannot usurp the Legislature's prerogative and sanction Yom Kippur as a *dies non juridicus* which would excuse the meeting of a statutory deadline. *See Bloom v. New York City Transit Auth.*, 19 A.D.2d 521, 240 N.Y.S.2d 124, 125 (1963) (reversing lower court's decision to treat Rosh Hashanah as a *dies non* and refusing to interpret the New York legal holiday statute to include "all days of general religious observance"); *see also* 73 *Am.Jur.2d Sundays & Holidays* § 5 (1974).

Although the phrase "extraordinary circumstances" appears in a number of statutes and court rules, neither the Legislature nor the Supreme Court has chosen to effect a textual definition. *See N.J.S.A.* 59:8–9; *see also, e.g., N.J.S.A.* 26:12–12; *N.J.S.A.* 30:4–27.16a; *N.J.S.A.* 40:55D–53h; *R.* 1:4–8(b)(3); *R.* 1:36–2(b); *R.* 4:38–2(b); *R.* 4:41–1. Whether such circumstances exist must therefore be determined by the courts on a case-by-case basis. *Allen v. Krause*, 306 *N.J.Super.* 448, 455, 703 A.2d 993 (App.Div.1997)(citing *O'Neill v. City of Newark*, 304 *N.J.Super.* 543, 551, 701 A.2d 717 (App.Div.1997), and *Ohlweiler v. Township of Chatham*, 290 *N.J.Super.* 399, 404, 675 A.2d 1176 (App.Div. 1996)).

While it is not always clear whether extraordinary circumstances are present, courts generally have had no difficulty in

finding their absence. *See Hartsfield v. Fantini*, 149 *N.J.* 611, 618–19, 695 *A.*2d 259 (1997); *O'Neill, supra*, 304 *N.J.Super.* at 551, 701 *A.*2d 717; *Wood, supra*, 302 *N.J.Super.* at 380, 695 *A.*2d 377; *Zois v. New Jersey Sports & Exposition Auth.*, 286 *N.J.Super.* 670, 674, 670 *A.*2d 92 (App.Div.1996); *Escalante v. Township of Cinnaminson*, 283 *N.J.Super.* 244, 250, 661 *A.*2d 837 (App.Div. 1995); *and cf. Rutgers Cas. Ins. Co. v. Vassas*, 139 *N.J.* 163, 173–74, 652 *A.*2d 162 (1995) (holding that "extraordinary circumstances can include a showing of the unusual complexity of the case."); *Ohlweiler, supra*, 290 *N.J.Super.* at 401–03, 675 *A.*2d 1176 (finding extraordinary circumstances where the extent of plaintiff's injury was not known until after the filing deadline had expired). We do not view the occurrence of Yom Kippur as an "extraordinary circumstance" excusing compliance with a statutory deadline. *See Bloom, supra*, 240 *N.Y.S.*2d at 125.

A faithful person is expected to accommodate both his/her secular affairs and religious duties in order to avoid conflicts with a religious day. An observant person may surely coordinate secular affairs with personal religious matters to obtain a maximum degree of harmony. Here, plaintiff, knowing that Yom Kippur was about to occur, should have made arrangements to make sure that the notice of tort claim would be timely filed in accordance with *N.J.S.A.* 59:8–8. We may not regard his inattentiveness as an extraordinary circumstance. *See O'Neill, supra*, 304 *N.J.Super.* at 552, 701 *A.*2d 717; *Zois, supra*, 286 *N.J.Super.* at 674, 670 *A.*2d 92. There is nothing unique, unusual, unexpected, or surprising about the annual occurrence of Yom Kippur. The date is predictable and within the knowledge of a devout observant. Plaintiff was not confronted by or beset with a wholly unexpected event which would excuse his lack of diligence. *See O'Neill, supra*, 304 *N.J.Super.* at 553, 701 *A.*2d 717 (citing *Escalante, supra*, 283 *N.J.Super.* at 250, 661 *A.*2d 837); *and cf. Ohlweiler, supra*, 290 *N.J.Super.* at 401–03, 675 *A.*2d 1176.

In accordance with the views herein set forth, we affirm the order of March 4, 1997, denying plaintiff leave to file a late notice of tort claim.