723 A.2d 75 (1999)
318 N.J. Super. 106
Lyudmila BLANK, Plaintiff-Respondent,
v.
CITY OF ELIZABETH and City Of Elizabeth Water & Sewer Utility, Defendants-Appellants,
and
Michael and Betsy Fabricant, Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted December 8, 1998.
Decided January 29, 1999.
*76 La Corte, Bundy & Varady, Elizabeth, for defendants-appellants (Christopher J. Kinsella, on the brief).
Frank P. Beninato, Jr., Elizabeth, for plaintiff-respondent.
Before Judges PRESSLER, KLEINER and STEINBERG.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This is a tort claims case. Defendants City of Elizabeth and City of Elizabeth Water & Sewer Utility (collectively Elizabeth) appeal from an order of the Law Division entered pursuant to N.J.S.A. 59:8-9 permitting plaintiff Lyudmila Blank to file a late notice of claim against them. We reverse and remand for further proceedings.
According to this meager record, plaintiff, a non-English speaking, sixty-one year old Russian immigrant, sustained serious injuries on February 27, 1997, when she tripped over a pipe protruding from the sidewalk abutting residential premises owned by defendants Michael and Betsy Fabricant. She retained counsel on April 1, 1997, after an office visit with an attorney conducted with the assistance of an interpreter. Counsel sent a notice of claim to the Fabricants, who turned it over to their homeowner's insurance carrier, Allstate Insurance Company. Apparently, a complaint was also filed against the Fabricants although we are not favored with a copy in this woefully inadequate record on appeal. In any event, according to counsel's certification filed in support of this motion, he was advised by Allstate on November 17, 1997, that the offending pipe belonged to Elizabeth. This motion for leave to file a late claim pursuant to N.J.S.A. 59:8-9 was filed less than a month later.
In his certification in support of the late-notice motion, counsel asserted that it had been his understanding that the pipe "was a pipe that was sticking through a sidewalk on the premises and had nothing to do with a public entity. This was partly because ... of the plaintiff's inability to speak English and the use of a translator." He went on to recite that his first notice of public-entity involvement was his receipt from Allstate in November of "a copy of their investigation" indicating that the pipe was a "City water pipe and not a pipe that was furnished or installed by Michael and Betsy Fabricant." Counsel then asserted that "none of the information referred to in this investigation could have been concluded within the time provided by the requirements for 90 day notice under the Tort Claim Act."
Plaintiff's motion is more notable for the information omitted than the information provided. Allstate's investigation report was not included. No photograph of the site was furnished. No description of the pipe was provided describing either its physical characteristics or its location. No information was forthcoming as to counsel's own investigatory actions, if any. Nothing in the motion record provided a basis on which a court could conclude that the appearance or location of the pipe actually did or should have placed plaintiff on notice that it was a public utility pipe. Nothing in the record permitted a court to discern the nature or complexity of the investigation required to ascertain the pipe's purpose, function or ownership, and whether the question of ownership was reasonably discernable during the ninety-day period. And nothing in the answering brief filed by Elizabeth provides any further clues to these essential matters.
Despite the paucity of the record before him, the trial judge granted plaintiff's motion. Noting that the decision on the motion was a matter within his discretion, the judge concluded that "there is good explanation as to why the plaintiff was late primarily because of a language difficulty with the Russian plaintiff and a problem with the translation." Elizabeth appeals, contending that the statutory standard of "extraordinary circumstances" justifying the late notice was not met.
*77 The Tort Claims Act, N.J.S.A. 59:1-1 to 59:12-3, requires notice of the claim to be presented to the public entity within ninety days following the accrual of the cause of action "except as otherwise provided in section 59:8-9...." N.J.S.A. 59:8-8. As originally adopted as part of the Tort Claims Act, N.J.S.A. 59:8-9 accorded the court the discretion to permit a late notice of claim after the ninety-day period but within a year following accrual on a showing of "sufficient reasons" for the failure of timely filing provided that the public entity would not be "substantially prejudiced" thereby. As tort-claim jurisprudence developed, the "sufficient reasons" threshold came to be liberally construed and the special-reasons standard was indulgently applied. See, e.g., Lamb v. Global Landfill Reclaiming, 111 N.J. 134, 147, 543 A.2d 443 (1988); S.E.W. Friel Co. v. N.J. Turnpike Authority, 73 N.J. 107, 122, 373 A.2d 364 (1977). N.J.S.A. 59:8-9 was, however, amended by L. 1994, c. 49, § 5, to raise the sufficient-reason threshold. The amendment no longer only requires a showing merely of sufficient reasons but rather "sufficient reasons constituting extraordinary circumstances." And the evident legislative purpose of this amendment was the abrogation of the liberal judicial construction of "sufficient reasons" standing alone. See, e.g., Ohlweiler v. Township of Chatham, 290 N.J.Super. 399, 404, 675 A.2d 1176 (App.Div. 1996); Zois v. New Jersey Sports & Expo. Auth., 286 N.J.Super. 670, 674-675, 670 A.2d 92 (App.Div.1996). The amendment, however, fails to define "extraordinary circumstances," leaving to case-by-case determination the issue of whether that standard has been met. See, e.g., O'Neill v. City of Newark, 304 N.J.Super. 543, 553, 701 A.2d 717 (App.Div.1997).
We agree with Elizabeth that plaintiff's showing and the court's rationale were deficient. That is to say, there is no basis we can discern in this record supporting the conclusion that plaintiff's unfamiliarity with the English language was the cause of her failure to give timely notice, and no other reason was relied on by the trial judge. But we do not believe that is the end of the matter. It is evident from this record that this late-notice application was perfunctorily treated by both plaintiff's counsel and the court. Both were apparently aware that the 1994 amendment of N.J.S.A. 59:8-9 imposed a strict requirement upon the plaintiff to show, and the court to find, extraordinary circumstances justifying a late notice rather than merely a "sufficient reason." It appears, however, that both were nevertheless relying on the broad scope of judicial discretion that preceded the amendment and on the liberal exercise of that discretion then appropriate. Accordingly, not much searching argument or analysis was made by either.
Nevertheless, as perfunctory as this application was, it suggested on its face the existence of extraordinary circumstances which, inexplicably, neither counsel nor the court considered or pursued. The potential extraordinary circumstance that we perceive is raised by counsel's unartful and unsupported assertion in his certification, quoted above, that the information disclosed in Allstate's investigation report could not have been discovered within the ninety-day period. Our concern is that that contention may well be so. The difficulty, of course, is that although the issue was raised, albeit obliquely, the motion papers were too perfunctory and uninformative to permit an adequately based judicial finding of extraordinary circumstances, and the judge did not pursue this assertion. As we have said, we know nothing about the pipe. It was not described in the motion papers. There is no photograph of it. It is impossible to say, therefore, whether there was anything about its appearance that should reasonably have put plaintiff on notice that it did not belong to or had not been installed or placed in the sidewalk by the property owner. We are, however, satisfied that the mere fact of the presence of a pipe, of whose description, character and location we are completely ignorant, cannot, without more, be deemed to have put anyone on notice that it might belong to a water utility company. Perhaps the pipe had a cap on it identifying the owner. Perhaps it appeared to be a venting pipe or piece of pipe left by a plumber. And unless the pipe itself bore some sort of identifying mark, what was required, by way of investigation and by whom, to determine whose pipe it was? Defendant's *78 carrier advised plaintiff's counsel in November 1997 that the pipe belonged to either Elizabeth or the Elizabeth Water & Sewer Utility. How long did it take the carrier, at whose disposal there are virtually unlimited investigative resources, to discover that fact and how did it do so? Was it correct in its assertion? What did plaintiff's attorney do in investigating the accident? We do not know that either. Did he act reasonably? Would a reasonable investigation have disclosed ownership of the pipe within the ninety-day period from the date of the accident? The point is that if there was nothing intrinsic in the appearance of the pipe to suggest its ownership by a public utility and if a reasonable investigation by an attorney would not have disclosed the fact of that ownership within ninety days following the accident, an extraordinary circumstance might have been demonstrated, shifting to the proposed public-entity defendant the burden of showing, with specificity and not by general allegation, how the delay in being noticed unduly prejudiced its ability to defend itself on the merits.
None of the late-notice cases decided since the 1994 amendment involves a situation in which the public entity's ownership of the allegedly defective property or the other basis of its involvement in the matter was not known by the plaintiff from the time of the accident. Rather, other circumstances entirely personal to the would-be plaintiff were relied on as meeting the "extraordinary" threshold. See, e.g., Epstein v. State, 311 N.J.Super. 350, 359-360, 709 A.2d 1353 (App. Div.), certif. denied, 155 N.J. 589, 715 A.2d 992 (1998) (the falling of the ninetieth day on Yom Kippur held not an extraordinary circumstance despite the fact that the proposed plaintiff was an orthodox Jew); O'Neill v. City of Newark, supra, 304 N.J.Super. at 553, 701 A.2d 717 (plaintiff's awareness "of the circumstances surrounding and the severity of his injury" precluded extraordinary circumstances based on alleged psychological trauma resulting from the injury); Wood v. County of Burlington, 302 N.J.Super. 371, 378-380, 695 A.2d 377 (App.Div.1997) (plaintiff's ignorance of municipal forms for making claim and untoward delay in responding after being properly advised held not to constitute extraordinary circumstances); Ohlweiler, supra, 290 N.J.Super. at 405-406, 675 A.2d 1176 (substantial, unusual and unanticipated change in plaintiff's physical condition constituted extraordinary circumstances); Zois, supra, 286 N.J.Super. at 674-675, 670 A.2d 92 (negligence of plaintiff's attorney's secretary in misplacing file does not constitute extraordinary circumstances); Randazzo v. Township of Washington, 286 N.J.Super. 215, 221, 668 A.2d 1083 (App.Div. 1995) (prompt oral notice to municipality excused failure of timely written notice and constituted an extraordinary circumstance).
There is an obvious distinction between knowing that one has a cause of action against a public entity and not pursuing it properly and timely for personal reasons and, on the other hand, not timely knowing or being chargeable with timely knowledge that a public entity may be liable for an injury. We are persuaded that the extraordinary-circumstances requirement is met where a plaintiff, within the ninety-day period, neither knows nor is chargeable with knowing of the existence of a cause of action against a public entity. This conclusion is nothing more than a specific application of the now familiar discovery rule of deferred accrual of a cause of action. Indeed, the discovery rule may well apply to the one-year limitation late-notice motion still provided for by the statute. See, e.g., Russo Farms v. Vineland Bd. of Educ., 144 N.J. 84, 106-108, 675 A.2d 1077 (1996). We see no reason why it should not also apply to the ninety-day period prescribed by the Legislature in typical accrual terms.
We thus view plaintiff's inadequate showing on the late-notice application as strongly suggestive of a discovery-rule extra-ordinary circumstance even though her motion was not definitively so framed. In the interest of substantial justice on the merits, the polestar of our system of the administration of civil justice, she should be accorded the opportunity to demonstrate now that she should not be reasonably chargeable with having discovered, during the ninety-day period following her injury, that the offending pipe belonged to a public entity. As the *79 Supreme Court noted in S.E.W. Friel Co., supra, 73 N.J. at 122, 373 A.2d 364, the late-notice application should be considered in light of "`the end that wherever possible cases may be heard on their merits, and any doubts which may exist should be resolved in favor of the application'" (quoting Viles v. California, 66 Cal.2d 24, 56 Cal.Rptr. 666, 669, 423 P.2d 818 (Sup.Ct.1967)). We do not believe that the 1994 amendment of N.J.S.A. 59:8-9 diminishes the vitality of that principle. The amendment prescribes a substantive standard for decision that binds the courtnamely, extraordinary circumstances. However, the issue before us is not substantive but, rather, procedural only. We do not regard it as a deviation from the legislative intention that motivated the amendment for us to continue to apply to the prescribed substantive standard the guiding procedural principle of according litigants their day in court.
We make this further observation regarding the counsel's oblique reference to the discovery rule but his total failure to pursue it. The question ultimately is whether counsel's failure should be dispositive or whether, in the interest of justice to this plaintiff, she should be given an opportunity to develop what appears to be the extraordinary circumstance implied by the motion. We opt for the latter. We regard a legal malpractice remedy as a poor substitute for prosecuting a claim against the responsible tortfeasor, and we are not at all sure that there is any net gain either for the community in general or for the court system in shifting the ultimate responsibility from a liability carrier to a malpractice carrier. We are also satisfied that had the motion judge more fully appreciated his obligation to find extraordinary circumstances, his response to the application would not have been its perfunctory approval but rather an insistence that plaintiff flesh out her claim. To that extent, at least, the court is also at fault for the risk of loss of plaintiff's potentially valuable cause of action.
Finally, a word about substantial prejudice. The 1994 amendment makes no substantial change in the original requirement of N.J.S.A. 59:8-9 that late-notice relief be accorded by the court only if the public entity will not be substantially prejudiced thereby. We think it plain that it is the public entity that has the burden of coming forward and of persuasion on the question of prejudice. Elizabeth did so here in general terms. We deem that, however, insufficient. Substantial prejudice in this context means substantial prejudice in maintaining one's defense. Generally that implies the loss of witnesses, the loss of evidence, fading memories, and the like. In the event, on remand, that the court finds that plaintiff has demonstrated the requisite extraordinary circumstances based on a discovery-rule type of showing, the court will then have to address the substantial prejudice question, and Elizabeth shall be required to show, with specificity and not by general allegation, the manner in which prejudice in maintaining its defense is likely to ensue from this late notice.
We reverse and remand for further proceedings consistent with this opinion.
KLEINER, J.A.D., dissenting.
Because N.J.S.A. 59:8-9, as amended effective June 23, 1994, requires filing of a notice of claim against a public entity under the Tort Claims Act, N.J.S.A. 59:1-1 to 59:12-3, within ninety days of its accrual, which may be waived on "application to the court," upon a showing of "extraordinary circumstances," I conclude that my colleagues have, under the circumstances of this case, misconstrued the "strict standard" imposed by the Legislature, see Zois v. New Jersey Sports & Expo., 286 N.J.Super. 670, 673-74, 670 A.2d 92 (App.Div.1996), and have established new precedent returning the late notice requirement to a "rule of liberality." Id. at 675, 670 A.2d 92 (citing Harry A. Margolis and Robert Novack, Claims Against Public Entities, p. 148 (1995), which the Legislature undoubtedly sought to circumvent by its statutory amendment). Because my colleagues' liberal interpretation completely undermines the Legislature's intent, I am constrained to dissent.

I
Defendants City of Elizabeth and City of Elizabeth Water & Sewer Utility (collectively "Elizabeth") appeal from an order permitting *80 plaintiff Lyudmila Blank to file a late notice of claim under the Tort Claims Act, N.J.S.A. 59:8-9 ("the Act"). Under the facts presented, I conclude the motion judge abused his discretion and thus erred when he determined that plaintiff had presented "reasons constituting extraordinary circumstances for [her] failure to file [a] notice of claim within the period of time prescribed by [N.J.S.A.] 59:8-8 ... or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter." N.J.S.A. 59:8-9.
On February 27, 1997, plaintiff, a sixty-one-year-old Russian emigree conversant only in Russian, tripped on a pipe protruding from a sidewalk in front of a home owned by co-defendants Michael and Betsy Fabricant ("Fabricant") in the City of Elizabeth. On April 1, 1997, plaintiff retained the services of counsel. According to plaintiff's counsel's certification filed in support of plaintiff's motion, when plaintiff first visited her counsel's office she utilized the services of a Russian language interpreter. She also executed a retainer agreement. Thereafter, her counsel notified Fabricant of his representation of plaintiff and her intent to pursue a claim for compensatory damages. Plaintiff's counsel did not notify Elizabeth, nor did he serve a Notice of Intention to Make a Claim, N.J.S.A. 59:8-8, upon Elizabeth.
According to plaintiff's counsel's certification, on November 17, 1997, he was advised by Allstate Insurance Company, Fabricant's homeowner's insurer, that the pipe upon which plaintiff allegedly tripped was the property of Elizabeth.[1] On December 11, 1997, plaintiff filed a motion pursuant to N.J.S.A. 59:8-9 for leave to file a late notice of claim upon Elizabeth. Only four paragraphs of counsel's certification are pertinent:
4. At this time [April 1, 1997], it was our understanding that the pipe was a pipe that was sticking through a sidewalk on the premises and had nothing to do with a public entity. This was partly because ... of the plaintiff's inability to speak English and the use of a translator.
5. However, the Allstate Insurance Company performed an independent investigation and on or about November 17, 1997 mailed a copy of their investigation to my office which indicated that apparently the residence owned by Michael and Betsy Fabricant is located along the middle of the block of Lincoln Avenue in the City of Elizabeth.
6. This investigation revealed that the so called pipe is apparently a water service pipe for the property and in any event the investigation concluded that it is a City water pipe and not a pipe that was furnished or installed by Michael and Betsy Fabricant. The report also states the pipe is Municipal property.
7. In any event, none of the information referred to in this investigation could have been concluded within the time provided by the requirement for 90 day notice under the Tort Claim Act.
In response, Elizabeth filed a brief contending, in part, the following argument:
The defendant, City Of Elizabeth, is severely prejudiced by the extended delay. Due to the failure to exercise due diligence and file within a reasonable period of time after the expiration of the 90 day limitation period, there is a gap of almost one year from the time of the happening of the motion. The allegation of entity involvement alone is too prejudicial to the City of Elizabeth without any factual support, to allow for the relief requested. As set forth in the Statement of Facts, the City of Elizabeth cannot be implicated in this manner by virtue of an investigation that is referred to in the certification of plaintiff's attorney.
Plaintiff did not file a response to defendant's brief. It seems quite clear that not only did plaintiff fail to provide the motion judge with a copy of the Allstate investigative *81 report, she also failed to provide Elizabeth with the same report.[2]
The motion judge granted plaintiff's motion concluding: "there is a good explanation as to why plaintiff was late because of a language difficulty with the [R]ussian plaintiff and problem with the translation." Although Elizabeth responded to plaintiff's motion contending that plaintiff failed to assert that Elizabeth would be prejudiced by the untimely filing of plaintiff's late notice, the motion judge did not address that contention nor did plaintiff file a reply certification addressing the question of Elizabeth's alleged prejudice.
On appeal, Elizabeth contends plaintiff failed to demonstrate "extraordinary circumstance" required by N.J.S.A. 59:8-9 to justify her failure to comply with the ninety-day notice requirement delineated in N.J.S.A. 59:8-8a, and failed to demonstrate that Elizabeth would not be substantially prejudiced by the late filing of a claim notice. Elizabeth contends that the motion judge abused his discretion in permitting the service upon it of a late notice.[3]
An action may not be brought against a public entity under the Act unless the claim is presented in accordance with the procedural and substantive requirements of the Act. N.J.S.A. 59:8-3; see Epstein v. State, 311 N.J.Super. 350, 355, 709 A.2d 1353 (App. Div.), certif. denied, 155 N.J. 589, 715 A.2d 992 (1998).
Filing a motion to file a late notice of claim under the Act requires a claimant to articulate, within one year of the accrual of a claim, "extraordinary circumstances" for failure to file a notice of claim within the ninety-day period following the accrual of a cause of action. N.J.S.A. 59:8-9.
The Act does not define the words "extraordinary circumstances." In Allen v. Krause, 306 N.J.Super. 448, 455, 703 A.2d 993 (App.Div.1997), we concluded "extraordinary circumstances" must be determined on a case-by-case basis. Ibid. (citing O'Neill v. City of Newark, 304 N.J.Super. 543, 551, 701 A.2d 717 (App.Div.1997)). The need to demonstrate "extraordinary circumstances," as well as the legislative history pre-dating the amendment to N.J.S.A. 59:8-9 adopting the term "extraordinary circumstances," has been fully explored in both Wood v. County of Burlington, 302 N.J.Super. 371, 378-79, 695 A.2d 377 (App.Div.1997), and Zois v. New Jersey Sports & Exposition Auth., supra, 286 N.J.Super. at 674-75, 670 A.2d 92.
Here, plaintiff, despite her injury and despite her language barrier, was able to arrange an appointment with counsel. Plaintiff either arranged to be accompanied by an interpreter or communicated her need for an interpreter, as an interpreter was present during her meeting with her counsel. *82 Through the use of an interpreter, plaintiff was obviously able to explain the circumstances surrounding her fall with sufficient clarity to cause her counsel to thereafter notify Fabricant, the adjacent property owner.
Although I acknowledge that plaintiff probably would not know who owned the pipe on which she tripped, it was clearly incumbent upon her counsel to investigate. My colleagues, ante at 111, 723 A.2d at 77, devote one entire page speculating assorted possible conclusions which may have been discovered by a proper investigation by plaintiff's counsel and indicate that "the judge did not pursue this obliquely raised assertion." Ibid. I simply do not agree that it was the judge's obligation to pursue an independent colloquy to determine whether plaintiff's counsel could have discovered within the time limitations of the Tort Claims Act those facts which would have supported his client's claim against a public entity.
As I construe the facts presented by plaintiff's motion, it seems entirely clear that plaintiff's counsel's certification fails to reveal any effort by him or someone in his employ to investigate the cause of plaintiff's fall. I do not conceive that plaintiff's alleged language barrier would have precluded her counsel from investigating the actual cause of plaintiff's fall. Moreover, neither plaintiff's language barrier nor counsel's failure to investigate comprise "extraordinary circumstances" under N.J.S.A. 59:8-9. Nor can I conclude that filing a motion to file a late claim on December 11, 1997, was within a "reasonable period" of May 27, 1997, the ninetieth day following the accrual of plaintiff's cause of action. N.J.S.A. 59:8-9 specifically permits "a motion seeking leave to file a late notice of claim within a reasonable time thereafter ...." (emphasis added). Here, plaintiff's motion was filed over six months after the statutory ninety-day period.
In Allen v. Krause, supra, 306 N.J.Super. at 455, 703 A.2d 993, another panel of this court concluded that N.J.S.A. 59:8-9[4] established a two-prong condition precedent to the grant of a motion to file a late notice of claim: (1) "extraordinary circumstances" for the failure to file a notice of claim within the ninety-day period following the accrual of a cause of action; and (2) proof that "the public entity ... has not been substantially prejudiced" by the late proposed notice of claim. Ibid. I do not agree with that precise interpretation. As I read N.J.S.A. 59:8-9, where a claimant seeks judicial relief from the timely notice requirement, despite "extraordinary circumstances," the public entity may respond and demonstrate that the late notice, if permitted, will "substantially prejudice" the public entity in its defense of the late claim. Based on my interpretation, once the public entity responds to plaintiff's motion to file a late claim, the motion judge must consider both plaintiff's claim of "extraordinary circumstances" balanced against the public entity's demonstration of "substantial prejudice."
Here, although Elizabeth responded in very general terms contending that it would be "substantially prejudiced" were plaintiff's motion granted, the motion judge failed to consider the efficacy of Elizabeth's contention. Although I would agree with Allen that a plaintiff seeking to file a late tort claims notice must meet a two-pronged test, the second prong of that test is not a component of plaintiff's proof until the public entity demonstrates a claim of "substantial prejudice." It is obvious that, based on this analysis of the statute, a plaintiff is entitled to respond to a demonstration of "substantial prejudice" by showing that the purported "substantial prejudice" is non-existent or is exaggerated.
Here, Elizabeth responded to plaintiff's motion demonstrating "substantial prejudice." However, plaintiff offered no response. Additionally, the motion judge failed to even consider Elizabeth's allegation. Once Elizabeth responded, it was incumbent upon the motion judge to address both plaintiff's claim of "extraordinary circumstances" and Elizabeth's demonstration of "substantial prejudice." Only then was the judge permitted to exercise his discretion in granting plaintiff's motion. The failure to properly construe the statutory prerequisites to filing *83 of a late notice under the Act constituted an abuse of discretion.
My colleagues, by returning to a "rule of liberality," Zois, supra, 286 N.J.Super. at 675, 670 A.2d 92, seek to justify their disregard of the legislative intent to create a "strict standard," id. at 673, 670 A.2d 92, before a late notice is permitted, by drawing an analogy to the "discovery rule." Ante, at 113, 723 A.2d at 78 (citing Russo Farms v. Vineland Bd. of Educ., 144 N.J. 84, 106-108, 675 A.2d 1077 (1996)). I do not construe Russo Farms as interpreting N.J.S.A. 59:8-9 utilizing a "discovery rule" premise. Russo applies to an injury caused by a "continuous tort" and concludes that a single notice of claim, N.J.S.A. 59:8-8, "preserves a claim for damages for each separate injury occurring between 90 days prior to the filing of the Notice of Claim and the filing of suit, subject to the limitations of N.J.S.A. 59:8-8(b)." Harry A. Margolis and Robert Novack, Claims Against Public Entities, p. 147 (1997). In any case, the "discovery rule" is totally inapplicable here. Plaintiff's counsel simply did not investigate the cause of his client's fall. His bare assertionthat had he done so, he would not have discovered the cause of the fall within the time constraints of N.J.S.A. 59:8-9is unfounded and sheer speculation. As noted, plaintiff's counsel never presented a copy of Allstate's investigatory report to the motion judge and thus its absence from the record on appeal does not permit a conclusion that plaintiff's counsel's assertion in paragraph 7 of his certification is correct.
My colleagues, citing S.E.W. Friel Co. v. N.J. Turnpike Authority, 73 N.J. 107, 122, 373 A.2d 364 (1977), warn that "the late-notice application should be considered in light of ` "the end that wherever possible cases should be resolved in favor of the application." `" Ante at 113, 723 A.2d at 79 (quoting Viles v. California, 66 Cal.2d 24, 56 Cal. Rptr. 666, 669, 423 P.2d 818 (Sup.Ct.1967)). I certainly do not disagree. I part company with the majority in their attempt to superimpose this lofty principle on the disposition of a routine motion filed by Elizabeth to dismiss plaintiff's motion for failure to adhere to the strict statutory requirement for a late notice embodied within N.J.S.A. 59:8-9. The majority would require that every facially insufficient application to file a late notice be probed by the motion judge to discern whether, if given another opportunity, counsel can articulate reasons for the requested relief within the ambit of the statute. The majority would ask that the motion judge reject any appropriate response from a public entity resisting a plaintiff's late notice application simply to permit a plaintiff to have a "second bite at the apple." Were that the intent of the Legislature, it is doubtful that N.J.S.A. 59:8-9 would have been amended. The "liberal" interpretation given to the predecessor statute which permitted a late notice upon a showing of "sufficient reasons" would have sufficed, and a statutory amendment requiring "sufficient reasons constituting extraordinary circumstances," id., would not have been necessary.
Additionally, I cannot subscribe to my colleagues' concern that "a legal malpractice remedy [is] a poor substitute for prosecuting a claim against the responsible tortfeasor." Ante at 114, 723 A.2d at 79. I do not espouse formulating an interpretation of a statutory mandate in a manner designed to absolve an attorney from a possible claim of legal malpractice. Moreover, there is absolutely no evidence in the record that Elizabeth is a potential tortfeasor. The mere fact that plaintiff's counsel asserts that Allstate's investigatory report accurately identifies Elizabeth as a tortfeasor should have no bearing upon a conclusion that plaintiff's motion should be reconsidered.
For the reason's stated, I dissent. I would reverse the decision of the motion judge based on the inadequacy of plaintiff's motion, his failure to properly consider the statutory mandate, and his failure to consider the claim of prejudice asserted by Elizabeth in response to plaintiff's motion. In this instance, the motion judge abused his discretion in granting plaintiff's motion.
NOTES
[1] Counsel's certification did not attach a copy of correspondence received from the Allstate Insurance Company. The record on appeal also omits a copy of Allstate's investigatory report. The absence of this report does not permit our review of the nature of Allstate's conclusion that the pipe was either owned or maintained by Elizabeth.
[2] Because the Allstate investigation was not provided to the motion judge, it obviously was omitted from the record on appeal. In the absence of the Allstate investigative report, we cannot discern if paragraph 7 of plaintiff's counsel's certification to the motion judge is a correct conclusion.

My colleagues' conclude:
The potential extraordinary circumstance that we perceive is raised by counsel's unartful and unsupported assertion in his certification, quoted above, that the information disclosed in Allstate's investigation report could not have been discovered within the ninety-day period. Our concern is that contention may well be so. The difficulty, of course, is that the motion papers were too perfunctory and uninformative to permit a judicial finding to that effect, and the judge did not pursue this obliquely raised assertion.
[emphasis added.]
This conclusion of "potential extraordinary circumstance," ante at 111, 723 A.2d at 77, is sheer speculation.
[3] N.J.S.A. 59:8-9 provides, in part:

A claimant who fails to file a notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity ... has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for this failure to file a notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter.... [emphasis added.]
[4] See n. 3, ante.