**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0588-17T3
                  A-0667-17T3

DOUGLAS BATES,

      Plaintiff-Respondent,

v.

TOWNSHIP OF JACKSON,

      Defendant-Appellant,

and

COUNTY OF OCEAN,

      Defendant-Respondent,

and

STATE OF NEW JERSEY,
SCOTT W. ALLERTON,
and LORI ALLERTON,

      Defendants.

_____

DOUGLAS BATES,

      Plaintiff-Respondent,

v.

TOWNSHIP OF JACKSON,

      Defendant-Respondent,

and

COUNTY OF OCEAN,

      Defendant-Appellant,

and

STATE OF NEW JERSEY,
SCOTT W. ALLERTON,
and LORI ALLERTON,

      Defendants.
_____

> Argued October 11, 2018 – Decided October 26, 2018
>
> Before Judges Reisner and Mawla.
>
> On appeal from Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1994-17.
>
> Michael S. Nagurka argued the cause for appellant Township of Jackson in A-0588-17 and respondent Township of Jackson in A-0667-17 (Gilmore & Monahan, PA, attorneys; Michael S. Nagurka, of counsel and on the briefs).
>
> Christopher A. Khatami argued the cause for appellant County of Ocean in A-0667-17 and respondent County of Ocean in A-0588-17 (Berry Sahradnik Kotzas &

Benson, attorneys; Christopher A. Khatami, on the briefs).

Robert R. Fuggi, Jr., argued the cause for respondent Douglas Bates (Fuggi Law Firm, PC, attorneys; Robert R. Fuggi, Jr., on the briefs).

PER CURIAM

In these consolidated matters, defendants the County of Ocean and Township of Jackson appeal from a September 15, 2017 order granting plaintiff's motion to file a Notice of Late Claim pursuant to the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. We affirm.

On the morning of September 14, 2016, plaintiff Douglas Bates was riding his motorcycle, on North New Prospect Road, near Andover Road, in Jackson Township. According to plaintiff, he encountered a "dangerous, slippery, and extremely slick surface," which caused him to lose control of the motorcycle and collide with another vehicle traveling in the opposite direction. Plaintiff was transported by ambulance and admitted to Jersey Shore University Medical Center.

According to plaintiff's medical records, his injuries included: multiple fractures of ribs; a dislocated right shoulder; a right knee laceration; first and second left rib fractures; a right comminuted scapula fracture; two mediastinal nematomas; C2 dens and posterior ring fracture; stable burst fracture of TS-T6

3

vertebra; traumatic pneumothorax; anterior displaced type II dens fracture; multiple bilateral rib fractures; a displaced associated transv/postfc right acetabulum; a displaced fracture of seventh cervical vertebra; a displaced fracture genoid cavity of scapula, right shoulder; a laceration without foreign body, right knee; an injury of unspecified ithrathoracic organ; multiple spine fractures, C2, C4, C7, T2, T3, TS; bilateral rib fractures with right pneumothorax; concussion with a loss of consciousness; and significant fractures extending from C2 – Cs.

The motion judge noted plaintiff had several surgeries including:

> Open reduction and internal fixation of a right comminuted scapula fracture on September 19; chest tube insertion, trauma bay on September 14; posterior cervical and thoracic instrumentation on September 16; open treatment of fractures, subluxation, multiple cervical and thoracic fractures; posterior segmental spinal instrumentation C3-4, 5, 6, Tl-2, 3, 4, 6, 7; posterior cervical thoracic infusion at C3-4, C4-5, C5-6, C6-7, C7-Tl, Tl-T2, T2-T3, T3-T4, T4-T5, T5-T6, T6-T7 with allograph.

Plaintiff was discharged from the hospital on September 22, 2016, and transferred to Meridian Rehabilitation Center for a short period of time. He was readmitted to the hospital to treat a surgical wound infection on October 3, 2016, and had surgical procedures on October 3, 6, and 13, 2016, to treat the infection.

A-0588-17T3

Plaintiff was discharged again from the hospital on October 13, 2016, and then returned to the rehabilitation center where he was treated until December 2016.

According to plaintiff's certification, in October 2016, his girlfriend "of her own accord" contacted a law firm to represent him regarding the accident. On October 24, 2016, the firm informed plaintiff's girlfriend it would not represent plaintiff. The ninety-day accrual period to file plaintiff's TCA notice expired on December 14, 2016. Plaintiff was unaware of the deadline.

Plaintiff continued his search for representation. In early 2017, he contacted a second attorney seeking representation. In March 2017, the attorney referred plaintiff to a third law firm. Plaintiff remained unaware of the TCA notice requirement.

Plaintiff then contacted his present counsel on June 28, 2017. Counsel filed a motion for leave to file a late notice of claim on July 12, 2017. In support of his motion, plaintiff provided his medical records and a certification detailing the facts we have recited.

Following oral argument, the motion judge granted plaintiff's motion. The judge found defendants failed to show they would be substantially prejudiced by the filing of a late notice of tort claim. The judge concluded plaintiff's "severe disabling and debilitating injuries" constituted extraordinary

A-0588-17T3

circumstances and justified the filing of a late notice of claim. This appeal followed.

## I.

We review an order granting or denying a motion for leave to file a late notice of claim under the TCA for an abuse of discretion. McDade v. Siazon, 208 N.J. 463, 476–77 (2011) (citing Lamb v. Glob. Landfill Reclaiming, 111 N.J. 134, 146 (1988)). "Although deference will ordinarily be given to the factual findings that undergird the trial court's decision, the court's conclusions will be overturned if they were reached under a misconception of the law." D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 147 (2013) (citing McDade v. Siazon, 208 N.J. 463, 473-74 (2011)).

## II.

The TCA requires a claimant to serve a notice of claim upon a public entity "[no] later than the [ninetieth] day after accrual of the cause of action." N.J.S.A. 59:8-8. "In determining whether a notice of claim under N.J.S.A. 59:8-8 has been timely filed, a sequential analysis must be undertaken." Beauchamp v. Amedio, 164 N.J. 111, 118 (2000).

> The first task is always to determine when the claim accrued. The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual. Once the date of accrual is ascertained, the next task is to

A-0588-17T3

determine whether a notice of claim was filed <u>within</u> ninety days. If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice.

[<u>Id.</u> at 118–19 (emphasis added).]

The TCA provides the following procedure allowing claimants to file a notice of claim beyond the required ninety-day period:

A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.

[N.J.S.A. 59:8-9.]

Therefore, in order to file a late notice of claim a plaintiff must demonstrate: "(1) 'extraordinary circumstances' for the failure to file a notice of claim within the ninety-day period following the accrual of a cause of action;

A-0588-17T3

and (2) proof that 'the public entity . . . has not been substantially prejudiced' by the late propose notice of claim." Blank v. City of Elizabeth, 318 N.J. Super. 106, 120 (App. Div. 1999) (citing Allen v. Krause, 306 N.J. Super. 448, 455 (App. Div. 1997)).

Defendants argue the motion judge ignored that plaintiff was searching for an attorney during the ninety-day period he was in rehabilitation. Defendants also argue the Supreme Court held in D.D. that an attorney's failure to advise a client regarding the ninety-day filing period under the TCA was not a basis to toll the time to file a notice of tort claim.

Separately, the County argues plaintiff was not hospitalized for the full initial forty-four day period. The County asserts there was no detail provided in plaintiff's certification as to why he could not call an attorney while he was in the hospital.

As to the second prong, which requires a consideration of the prejudice to defendants, the Township argues it was prejudiced by the lack of notice of plaintiff's claim. The County asserts no argument as to the second prong. We address these arguments in turn.

A.

The TCA "does not define what circumstances are to be considered 'extraordinary' and necessarily leaves it for a case-by-case determination as to whether the reasons given rise to the level of 'extraordinary' on the facts presented." Lowe v. Zarghami, 158 N.J. 606, 626 (1999) (citations omitted). The finding of extraordinary circumstances is "an imprecise standard" and "each case will depend on its own circumstances." Id. at 629.

Our Supreme Court has stated "[p]ublished authority from our Appellate Division has generally concluded that medical conditions meet the extraordinary circumstances standard if they are severe or debilitating." D.D., 213 N.J. at 149 (citations omitted). Cases in which medical conditions have been asserted as proof of extraordinary circumstances have placed an emphasis on "the severity of the medical condition and the consequential impact on the claimant's very ability to pursue redress and attend to the filing of the claim." Id. at 150. "[A] judge must consider the collective impact of the circumstances offered as reasons for the delay." R.L. v. State-Operated Sch. Dist., 387 N.J. Super. 331, 341 (App. Div. 2006).

In Maher v. Cty. of Mercer, 384 N.J. Super. 182, 183 (App. Div. 2006), a plaintiff was hospitalized after receiving a burn, which then caused septic shock,

a staph infection, pneumonia, and memory loss. The plaintiff was also placed in an induced coma during her first hospitalization, because she was not expected to live, and had repeated admissions to the hospital within the ninety-day filing period. Id. at 189-90. We found the plaintiff's "circumstances that led to the delay in filing the notice and the motion were truly extraordinary." Id. at 189.

In R.L., we affirmed a decision to permit the late filing of a claim where the plaintiff was a student who had contracted HIV from a sexual relationship with a teacher. 387 N.J. Super. at 334, 341. The delay in filing was due to the plaintiff's psychological trauma, which we noted caused him emotional distress, periods of crying, preoccupation with death, and ultimately a hesitancy to reveal his HIV status. Id. at 336. We held plaintiff had established extraordinary circumstances justifying the late filing a notice of claim against a school district because of the "stigma [of HIV] recognized by our courts[.]" Id. at 341.

Not all medical conditions will meet the extraordinary circumstances standard to justify filing a late tort claim notice. In D.D. a plaintiff claimed to suffer from shock, stress, anxiety, fatigue, depression, the inability to perform as a public speaker, and overall deterioration of her physical and mental health resulting from defendant's disclosure of her confidential health information to

third parties in a press release. 213 N.J. at 138-39. However, the Court found "there [was] no evidence that these complaints were of sufficient immediate concern to her or were so significant in nature that she sought medical care to address them." Id. at 150. The Court stated there was a lack of "any evidence in the record that plaintiff was prevented from acting to pursue her complaint or that her ability to do so was in any way impeded by her medical or emotional state" and her conditions were "[f]ar from being 'stymied' or even impaired in her ability to act." Id. at 151.

The Court held when "engaging in the analysis of extraordinary circumstances, the court's focus must be directed to the evidence that relates to plaintiff's circumstances as they were during the ninety-day time period, because that is the time during which the notice should have been filed." Ibid. (emphasis added). The Court emphasized the vagueness of plaintiff's certification and doctor's note describing her symptoms were "not tied to the relevant time frame," referring to the ninety-day period. Ibid.

In O'Neill v. City of Newark, 304 N.J. Super. 543, 554 (App. Div. 1997), we held a plaintiff preoccupied with recovery and treatment efforts did not sufficiently demonstrate a showing of extraordinary circumstances to justify a delay in filing a timely notice. We noted:

Plaintiff was able to leave his home, as evidenced by his trips to various doctors in the days after the accident, and neither plaintiff nor the psychological examination provides sufficient proof that he did not have the mental capacity to contact an attorney. The obvious inference is, therefore, that plaintiff could have made a trip to an attorney's office or, at least, called one on the telephone, especially since his own certification does not state any facts to the contrary. His failure to contact an attorney cannot in these circumstances be said to be the result of extraordinary circumstances.

[Ibid.]

Here, the motion judge recited facts from plaintiff's certification, which included unrebutted assertions regarding the nature and extent of plaintiff's injuries. Plaintiff's injuries rendered him unconscious and were life threatening. Plaintiff certified he suffered "a broken neck, a broken back, a broken shoulder, broken ribs, and broken wrists. [He] also suffered broken hands, a collapsed lung, several abrasions and bruises, and [an] infection." The judge noted plaintiff certified he was confined to a bed "virtually around the clock . . . [and his] injuries were so severe and life threatening that [he] was not capable of doing much of anything . . . [and] was told by [his] doctors that additional stress to [his] body could seriously hinder [his] recovery." As the judge noted, defendant certified his transfer to rehabilitation was to "relearn[] how to do some of life's most basic tasks such as walking." Therefore, according to plaintiff's

certification, he was unable to contact an attorney to file his claim even while in rehabilitation during the ninety days following the accident.

The judge also relied upon plaintiff's medical records and recited the list of injuries and surgical procedures plaintiff endured, which we have recounted above. The judge concluded plaintiff had demonstrated "severe[,] disabling and debilitating injuries and was either in the hospital or in a rehab[ilatation] facility for a substantial time following the . . . accident that impacted his ability to file a notice of tort claim by December 13, 2016." The record amply supports the motion judge's finding of extraordinary circumstances. Plaintiff was in no condition to seek out counsel himself during the ninety days after the accident.

Finally, the Township contends it would be prejudiced by the filing of a late notice. Specifically, it argues it would have made a prompt investigation and assessment of the roadway if served with a timely notice of claim. The Township did not support its claim with certifications or other legally competent evidence.

"[I]t is the public entity that has the burden of coming forward and of persuasion on the question of [substantial] prejudice." Blank, 318 N.J. Super. at 114. "The fact of delay alone does not give rise to the assumption of prejudice; the public entity must present a factual basis for the claim of

substantial prejudice." <u>Mendez v. S. Jersey Transp. Auth.</u>, 416 N.J. Super. 525, 535 (App. Div. 2010) (citing <u>Kleinke v. City of Ocean City</u>, 147 N.J. Super. 575, 581 (App. Div. 1977). "Substantial prejudice must be shown by 'specificity and not by general allegation[.]'" <u>Id.</u> at 536 (citing <u>Blank</u>, 318 N.J. Super. at 115). A contention of a defendant being "totally unaware of the accident" and having "lost a critical opportunity to engage in timely investigation" is insufficient to constitute the substantial prejudice requirement under N.J.S.A. 59:8-9. <u>Mendez</u>, 416 N.J. Super. at 535. Substantial prejudice "[g]enerally . . . implies the loss of witnesses, the loss of evidence, fading memories, and the like." <u>Blank</u>, 318 N.J. Super. at 115.

As the motion judge noted, defendants did not assert a substantial prejudice in the form of missing evidence or information relating to the accident. Indeed, a contemporaneous police report was prepared, and would have provided the Township with a recitation of the conditions on the date of the accident and identified or led to the identification of potential witnesses in aid of the Township's defense.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0588-17T3