703 A.2d 993

RICHARD ALLEN AND BARBARA ALLEN, HIS WIFE, PLAIN-
TIFFS–RESPONDENTS, v. TYRONE J. KRAUSE, M.D., AND
ROBERT WOOD JOHNSON UNIVERSITY HOSPITAL, DEFEN-
DANTS–APPELLANTS.

CHRISTINE SMITH AND JAMES SMITH, HER HUSBAND, PLAIN-
TIFFS–RESPONDENTS, v. ALBERT FRANKEL, M.D., LOUIS
D'AMELIO, M.D., AND THE UNIVERSITY OF MEDICINE AND
DENTISTRY OF NEW JERSEY, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued December 2, 1997—Decided December 30, 1997.

Before Judges LONG, STERN and KIMMELMAN.

*Matthew S. Schorr* argued the cause for appellants (*McDonough, Korn, Eichhorn & Boyle*, attorneys; *Mr. Schorr*, of counsel and on the brief).

*Kenneth A. Berkowitz* argued the cause for respondents (*Blume, Goldfaden, Berkowitz, Donnelly, Fried & Forte*, attorneys; *Linda G. O'Connell*, on the brief).

The opinion of the court was delivered by

KIMMELMAN, J.A.D.

These appeals were separately docketed, briefed, and argued. Although the factual patterns of the appeals differ somewhat, the appeals parallel each other with respect to the applicable legal principles. We have therefore elected to consolidate the cases for the purpose of decision. Both appeals involve the same legal questions: Whether defendant physicians were each acting as private practitioners when performing surgery on plaintiffs, or acting as public employees of defendant hospital and, if the latter, whether there were "extraordinary circumstances" entitling plaintiffs to file a late notice of claim under *N.J.S.A.* 59:8–9 of the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 to 12–3.

Initially, in each matter, the trial judge refused to grant plaintiffs' applications for leave to file a late notice of claim. But, on June 5, 1997, the trial judge, relying on our decision in *Dunn v. Borough of Mountainside,* 301 *N.J.Super.* 262, 693 *A.*2d 1248 (App.Div.1997), entered, *sua sponte,* orders reversing his initial decision. Plaintiffs were then permitted to file a late notice of claim in each case. After the denials of their motions for reconsideration, defendants made applications to this court for leave to file interlocutory appeals. On August 14, 1997, we granted leave to file the interlocutory appeals.

## I

In A–7057–96, plaintiff Richard Allen [1] underwent cardiac bypass surgery at defendant Robert Wood Johnson University Hospital (RWJUH). The surgery, which was intended to relieve blockages near plaintiff's heart, was performed by defendant Tyrone J. Krause, M.D., during December 1995. On or about June 18, 1996, plaintiff Allen was informed by his cardiologist that the December 1995 cardiac surgery "had been done incorrectly

---

[1] Plaintiff Allen's wife, Barbara Allen, sues *per quod.*

and that two blockages remained."[2]  Plaintiff waited until May 7, 1997, to consult with counsel, some eleven months after he had been given information indicating that he had grounds for a possible lawsuit related to the surgery.  The next day, plaintiff's counsel moved for leave to file a late notice of claim, certifying that it was not known whether one of the potential defendants would claim "public employee status."  In plaintiff Allen's supporting certification, he said:

> From the time I first came under the care and treatment of Dr. Krause and the physicians at Robert Wood Johnson University Hospital, I have always been under the impression that Dr. Krause was a private physician and that the people who cared for me at Robert Wood Johnson were employees of that Hospital.  None of my health care providers have ever informed me that they were not private doctors or employees of Robert Wood Johnson University Hospital, and I have never received any information from any other source to that effect.

In opposition, it was certified that defendant Krause was an employee of the University of Medicine and Dentistry of New Jersey (UMDNJ).  Defendants in *Allen* argued the following facts in their brief to the trial court:

> Plaintiff's surgery was performed at Robert Wood Johnson University Hospital ("RWJUH") by the defendant Tyrone J. Krause, M.D., an employee of the University of Medicine and Dentistry of New Jersey ("UMDNJ").
>
> RWJUH is a hospital affiliated with UMDNJ.  Certain physicians who work at RWJUH may claim public employee status by virtue of their affiliation with the Robert Wood Johnson Medical School, which is affiliated with UMDNJ.  Plaintiff's counsel, the law firm of Blume, Goldfaden, Berkowitz, Donnelly, Fried & Forte, P.C. was aware of this relationship at all relevant times.
>
> . . .
>
> UMDNJ is a public entity under Chapter 8 of Title 59 under the New Jersey Tort Claims Act ("The Act") and Tyrone J. Krause, M.D. is an employee of a public entity.  Pursuant to the Act, Dr. Krause is entitled to receive a notice of tort claim within ninety days from accrual of the alleged injury before a suit can be filed.

Defendants contended that plaintiff Allen's application for leave to file a late notice of claim should be denied because Dr. Krause was an employee of a public entity and that there had been no showing of "extraordinary circumstances," as required by *N.J.S.A.*

---

[2] The defendants acknowledge before us that the one-year time period did not begin to run until June 18, 1996.

59:8–9. Defendant's counsel supported this contention with proof that plaintiff's counsel knew, from unrelated but similar cases, that defendant Krause may well have been acting as a public employee at the time of plaintiff Allen's surgery.

As we have indicated, after an initial denial, leave to file a late notice of claim was granted by the trial court. We granted leave to appeal the trial court's interlocutory order.

## II

In A–7061–96, plaintiff Christine Smith [3] underwent abdominal surgery at defendant RWJUH. The surgery was performed on May 20, 1996, by defendants Robert Frankel, M.D., and Louis D'Amelio, M.D. On June 13, 1996, twenty-three days after the surgery, plaintiff perceived sufficient reason to contact counsel in order to determine whether there existed a basis for a viable medical malpractice claim. By letter dated August 15, 1996, counsel requested of RWJUH that it produce the complete records relating to plaintiff's admission and the names and addresses of the persons participating in plaintiff Smith's health care, whether they were "employees of any public entity" and, if so, the name and address of the public entity. RWJUH furnished the records, but did not respond to the latter part of counsel's request. Nonetheless, the record on appeal does indicate that defendant Frankel wrote to counsel on September 25, 1996, in response to counsel's request for the doctor's office records related to the care of plaintiff Smith. Defendant Frankel's letter was on stationery captioned in the names of UMDNJ and RWJUH, and was signed by defendant Frankel as "Professor of Clinical Surgery." The letter was received by plaintiff's counsel shortly after the expiration of the ninety-day window for the filing of a notice of claim. *See N.J.S.A.* 59:8–8.

---

[3] Plaintiff Smith's husband, James Smith, sues *per quod.*

Several months later, on or about May 6, 1997, just days short of one year following the surgery, counsel for plaintiff Smith applied to the trial court for leave to file a late notice of claim. Counsel certified that he did not learn from his own medical expert that there had been a deviation from accepted medical standards until April 23, 1997, and that he did not receive information that defendants Frankel and D'Amelio might claim to be employees of UMDNJ until May 6, 1997. Although counsel asserted a belief that said defendants operated on plaintiff Smith as their private patient and that a tort claim notice was not necessary, the application for leave to file a late notice of claim was being made to protect his clients' rights. Counsel failed to point out to the court his receipt of defendant Frankel's letter of September 25, 1996, which clearly indicated the doctor's affiliation with UMDNJ, a public entity. *See Fuchilla v. Layman*, 109 *N.J.* 319, 330–31, 537 *A.2d* 652, *cert. denied sub nom, University of Med. and Dentistry of N.J. v. Fuchilla*, 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988).

Plaintiff Smith certified, in part, as follows:

> It was my understanding that Dr. Frankel was a private physician and that he was treating me as his private patient. My insurance company, HIP/Rutger's [sic] Health Plan has paid all of his bills. At no time did Dr. Frankel or anyone else ever advise me that Dr. Frankel was an employee of the University of Medicine and Dentistry of New Jersey.

In opposition to plaintiff Smith's application for leave to file a late notice of claim, defendants advanced substantially the same arguments made in plaintiff Allen's case and again urged that "extraordinary circumstances" could not be shown, because plaintiff Smith's counsel knew, from unrelated but similar cases, that defendants Frankel and D'Amelio may well have been acting as public employees at the time of plaintiff Smith's surgery. Defendants also contend that plaintiff's counsel was made aware of the likelihood that the physicians would claim public employee status when he received the September 25, 1996, letter from defendant Krause.

As in the companion appeal, leave to file a late notice of claim was at first denied, because of the lack of a showing of "extraordinary circumstances," but leave was later granted by the trial court on a *sua sponte* basis, in reliance on *Dunn v. Borough of Mountainside.* We, likewise, granted the application for leave to appeal.

### III

Initially, we point out that the trial judge's reliance upon *Dunn* as authority to permit the filing of a late notice of claim in each matter was misplaced. In *Dunn,* plaintiff was sexually assaulted by an on-duty police officer who had pulled her over for a putative traffic violation. She did not bring suit against the Borough and the deviant police officer until three years later. *Dunn, supra,* 301 *N.J.Super.* at 270–71, 693 *A.*2d 1248. We affirmed the summary judgment granted in favor of the Borough, because plaintiff was aware of her injuries the moment they occurred, and more than two years had elapsed from the accrual of her claims, thereby barring her action under *N.J.S.A.* 59:8–8b. *Id.* at 275, 693 *A.*2d 1248. However, we allowed the claim against the police officer to proceed, because the assault took place in 1991, before the Tort Claims Act was amended to provide limited tort claim immunity to public employees by requiring a notice of claim to be filed with respect to their alleged torts. Consequently, the police officer was not covered by the Tort Claims Act. *Id.* at 276, 693 *A.*2d 1248. Since the police officer had done his best from the time of the incident to conceal his identity and had failed to fulfill his statutory duty to report all criminal activity, including his own, we held that the two-year statute of limitations was tolled for equitable reasons. *Id.* at 280, 693 *A.*2d 1248. Adherence to the notice requirements of the Tort Claims Act was not an issue with respect to the police officer; and the extension of the ninety-day filing rule for "extraordinary circumstances" was not an issue with respect to either the Borough or the police officer.

■ Unlike *Dunn,* (1) the accrual of plaintiff Allen's and plaintiff Smith's causes of action occurred after the Tort Claims Act was amended to require the filing of a notice of claim for actions against public employees; (2) there is nothing in the record to suggest that any of the defendants acted to prevent either plaintiff Allen or plaintiff Smith from knowing that a possible cause of action existed; and (3) significantly, plaintiff Allen and plaintiff Smith knew from the outset who had performed the surgical operations, so that the identity of the alleged tortfeasor(s) was never in doubt; only their employment status was at issue. The converse situation existed in *Dunn,* where the police officer tortfeasor's public employment status was never in doubt, but his identity was concealed. In both of the cases on this appeal, the issue involves the inability to discover, or tardiness in discovering, the public employee status of defendant physicians. Thus, *Dunn* is entirely distinguishable.

## IV

■ Permission to file a late notice of claim requires a showing (1) that the public entity or public employee will not be "substantially prejudiced" by the granting of such permission; and (2) that there are sufficient reasons, based upon the personal knowledge of the affiant, constituting "extraordinary circumstances" for the failure to file a notice of claim within the ninety-day window prescribed by *N.J.S.A.* 59:8–8. *See N.J.S.A.* 59:8–9; *Ohlweiler v. Township of Chatham,* 290 *N.J.Super.* 399, 404, 675 *A.*2d 1176 (App.Div.1996). The term "extraordinary circumstances" has not been defined by the Legislature. It is for the courts to determine, on a case-by-case basis, what circumstances, in the context presented, will satisfy the statutory requirement. *O'Neill v. City of Newark,* 304 *N.J.Super.* 543, 551, 701 *A.*2d 717 (App.Div.1997) (quoting *Ohlweiler, supra,* at 404, 675 *A.*2d 1176).

■ Here, the trial court made no findings of fact or conclusions of law, in either of the cases now under appeal, to support the required statutory findings of the lack of "substantial prejudice"

and the presence of "extraordinary circumstances." We hold that such findings must be expressly made in order to comply with the legislative mandate and to justify the entry of an order permitting the filing of a late notice of claim under *N.J.S.A.* 59:8–9.

By reason of the foregoing, the *sua sponte* orders of June 5, 1997, entered in each case under appeal are reversed. The matters are remanded for further proceedings. We do not retain jurisdiction.