751 A.2d 559

SAMUEL A. VENTOLA AND JOSEPHINE VENTOLA, HIS WIFE, PLAINTIFFS–APPELLANTS, v. NEW JERSEY VETERAN'S MEMORIAL HOME, PARAMUS, NEW JERSEY, DEFENDANT–RESPONDENT.

Argued January 18, 2000—Decided June 5, 2000.

*Craig W. Alexander,* argued the cause for appellants (*Mandelbaum, Salsburg, Gold, Lazris, Discenza, Steinberg,* attorneys).

*Jerry Fischer,* Assistant Attorney General, argued the cause for respondent (*John J. Farmer, Jr.,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Valerie L. Egar,* Deputy Attorney General, on the brief).

PER CURIAM.

This case involves a transitional application of the principles recently announced in *Lowe v. Zarghami,* 158 *N.J.* 606, 731 *A.*2d 14 (1999) that govern the late notice of tort claims against public entity health-care providers under the Tort Claims Act (TCA), *N.J.S.A.* 59:1–1 to 12–3. The Appellate Division decided this case on May 24, 1999, fourteen days before our decision in *Lowe.*

In *Lowe,* the Court found that the status of a physician health-care provider as an employee of the State was "obscured." 158 *N.J.* at 630, 731 *A.*2d 14. This created the extraordinary circumstances permitting notice of claim to be filed more than ninety days after the cause of action accrues. The Court directed that in future cases and to resolve patients' doubt surrounding the status of their physician health-care providers, the State teaching hospital must require clinical professors employed by it to advise their patients, *both orally and in writing,* that they are employees of a public entity. Such notice should be given to a patient as soon as practicable. The Court held that "[t]hose steps, if taken, ... should make patients more aware that their physicians are public employees [of the State] entitled to notice under the TCA." 158 *N.J.* at 631, 731 *A.*2d 14. This case arose before the Court's decision in *Lowe.* Although there were in hindsight indications of the status of the institution, no notice similar to that suggested by *Lowe* was given by any of plaintiff's attending physicians or administrators of the institution involved. Rather than remand this case to the Appellate Division, we are satisfied that in the circumstances here, circumstances that should not recur because of *Lowe,* the ninety-day notice provisions of the TCA should be

tolled to allow the claimant to seek compensation under the TCA. In future cases, compliance with *Lowe* will bar similar such claims.

## I

### A.

Under the New Jersey Tort Claims Act, a party has ninety days, from the time a claim accrues, to file a notice of claim. *N.J.S.A.* 59:8–8. Section 59:8–8 provides that:

> A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action. After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The claimant shall be forever barred from recovering against a public entity or public employee if ... [h]e [or she] failed to file his [or her] claim with the public entity within 90 days of accrual of the claim except as otherwise provided in section 59:8–9. . . .
>
> [<em>Id.</em> at 59:8–8(a).]

■ The purpose of the ninety-day limit is to "compel a claimant to expose his [or her] intention and information early in the process in order to permit the public entity to undertake an investigation while witnesses are available and the facts are fresh." *O'Neill v. City of Newark*, 304 *N.J.Super.* 543, 549, 701 *A.*2d 717 (App.Div.1997) (citing *Lutz v. Township of Gloucester*, 153 *N.J.Super.* 461, 466, 380 *A.*2d 280 (App.Div.1977)).

*N.J.S.A.* 59:8–9 allows the filing of a late notice of claim. Before 1994, a plaintiff proceeding under section 59:8–9 was required to show "sufficient reasons" for failing to file within the ninety-day period. A 1994 amendment provides:

> A claimant who fails to file notice of his [or her] claim within 90 days as provided in section 59:8–8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his [or her] claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his [or her] failure to file notice of claim within the period of time prescribed by section 59:8–8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event

> may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.
> [*N.J.S.A.* 59:8–9.]

The statute "does not define what circumstances are to be considered 'extraordinary' and necessarily leaves it for a case-by-case determination as to whether the reasons given rise to the level of 'extraordinary' on the facts presented." *Lowe v. Zarghami, supra,* 158 *N.J.* at 626, 731 *A.*2d 14 (citing *Allen v. Krause,* 306 *N.J.Super.* 448, 455, 703 *A.*2d 993 (App.Div.1997)).

### B.

As noted, in *Lowe v. Zarghami, supra,* the New Jersey Supreme Court found that extraordinary circumstances existed for a patient who was justifiably unaware that her physician was a public employee. 158 *N.J.* at 629, 731 *A.*2d 14. The defendant, plaintiff's treating physician, was a clinical professor employed by the University of Medicine and Dentistry of New Jersey ("UMDNJ") but who practiced medicine at the Robert Wood Johnson University Hospital, a UMDNJ-affiliated private hospital. The Court found that the apparent status of the defendant as a private physician obscured his true status as a public employee. *Ibid.* Because the plaintiff had no reason to suspect that her doctor was associated with the UMDNJ and acted with diligence in pursuing her medical malpractice claim, the Court allowed the late notice of claim in light of the "extraordinary circumstances." *Id.* at 629–30, 731 *A.*2d 14.[1]

The question before this Court is whether the Ventolas, like the plaintiffs in *Lowe,* have demonstrated "extraordinary circumstances" for their failure to file a timely notice of claim.

---

[1] *Lowe v. Zarghami, supra,* and *Eagan v. Boyarsky,* 158 *N.J.* 632, 731 *A.*2d 28 (1999), were decided on the same day. The two cases, involving plaintiffs allegedly injured by UMDNJ clinical professors practicing in private hospitals, presented different issues. In *Eagan,* the issue was whether to allow a suit to be filed beyond the one-year time period provided in *N.J.S.A.* 59:8–9. The Court found that "[i]n such unique circumstances ... the Legislature intended the one-year ban ... to be tolled," and thus, the plaintiff was entitled to file a late notice of claim. 158 *N.J.* at 642–43, 731 *A.*2d 28.

## II

Samuel Ventola has been a resident of the Respondent New Jersey Veteran's Memorial Home (VMH) at Paramus since February of 1993. At the time of these proceedings, Samuel was a sixty-seven-year-old veteran of the U.S. armed forces who was physically disabled. Josephine, Samuel's wife, was sixty-eight years old. During a visit to her husband on November 9, 1997, Josephine observed that Samuel's foot was swollen. Samuel was transferred to another facility for an examination. The examination revealed that Samuel's leg was broken and badly infected. The physician who treated Samuel rendered an opinion that Samuel had suffered with an undiagnosed broken leg for approximately four weeks. Gangrene had set in by the time of the examination, and as a result, Samuel's leg was amputated below the knee on November 13, 1997.

Josephine consulted an attorney in December of 1997. Because the Ventolas understood the VMH to be a federal hospital, and so advised their attorney, an administrative claim form was filed with the United States Department of Veterans Affairs, pursuant to the Federal Tort Claims Act, 28 *U.S.C.A.* § 1346(b), on April 27, 1998, a prerequisite to suit established by federal law. The Department of Veterans Affairs notified the attorney on May 6, 1998, that the facility in question was operated by the State of New Jersey.

On May 21, 1998, the Ventolas sought permission to file a late notice of claim against the State pursuant to *N.J.S.A.* 59:8-9. As a threshold requirement, the statute requires a claimant seeking leave to file a late notice of claim to establish "sufficient reasons constituting extraordinary circumstances," excusing the failure to file the notice within ninety days of the accrual of the cause of action. *N.J.S.A.* 59:8-9.[2]

---

[2] In addition to this, there must not be any undue prejudice to the governmental entity, and the plaintiff must file the claim within the two-year statute of limitations. Those requirements are not at issue here.

In support of the motion, Josephine certified that she believed that the facility was owned and operated by the federal government. Josephine stated that she believed this because the facility is exclusively operated for veterans and because Pentagon officials were regularly at the facility.

VMH sought to show that Josephine's belief was not in good faith, and even if it was in good faith, it was unreasonable. VMH presented various documents that were signed by Josephine and Samuel at the time of Samuel's admission, approximately four years prior to the injury. One was an authorization directed to the United States Department of Veterans' Affairs permitting that agency to release information concerning Samuel's "V.A. Benefits to the N.J. Veterans Memorial Home at Paramus, N.J. Department of Military & Veterans Affairs." Each of the documents contained a letterhead with the words, "State of New Jersey, Department of Military and Veterans' Affairs, New Jersey Veterans' Memorial Home at Paramus." Each document stated at the bottom that, "New Jersey is an Equal Opportunity Employer" and contained the Seal of the State of New Jersey at the top. The application for admission to the VMH stated that eligibility for admission is made in accordance with the "New Jersey Administrative Code." VMH also presented checks written each month by Josephine payable to "N.J. Veterans Home at Paramus." Finally, the VMH "Resident's Handbook" is subtitled "Rules and Regulations for New Jersey's Veterans Memorial Homes," shows a map of New Jersey on the cover, and the location of the three veterans' homes in the State. The Handbook indicates that it had been published by the "State of New Jersey, Department of Military and Veterans Affairs, Division of Veterans Healthcare Services."

The trial court found that the Ventolas had failed to demonstrate extraordinary circumstances. The court stated that, at best, this case presented a situation in which the plaintiff had a good faith, but mistaken belief that the institution was a federal-run facility. The court found the Ventolas' belief to be unreasonable because the Ventolas had been in possession of information

that the court found clearly indicated that the facility is a state-run institution. The court also found that no one had misled the Ventolas to believe that the facility was run by the Federal government. The trial court denied the Ventolas' motion.

In an unpublished opinion, the Appellate Division affirmed the trial court's denial of the Ventolas' application to file a late notice of claim. The court observed that the decision whether to grant or deny an application to file a late notice of claim is discretionary and that the trial court did not misconstrue the facts or the applicable law. The panel agreed that the Ventolas had failed to carry their burden of demonstrating "extraordinary circumstances" that is the new, more stringent standard required by *N.J.S.A.* 59:8–9. Hence, the court affirmed the denial of the Ventolas' application.

We granted the Ventolas' petition for certification. 161 *N.J.* 335, 736 *A.*2d 528 (1999).

## III

The United States Veterans' Health Administration is perhaps "the most visible of all veterans' benefits and services." *Veterans Health Administration,* (visited Feb. 3, 2000) <*http://www.va.gov/About VA/Orgs/vha/index.htm* >. The VA health-care system has grown from fifty-four hospitals in 1930 to include 173 medical centers with one in each of the forty-eight contiguous states, Puerto Rico and the District of Columbia; more than 391 out-patient community operation clinics; 131 nursing care units and thirty domiciliaries. *Ibid.* These facilities provide a wide range of medical, surgical and rehabilitative care. *Ibid.*

VA is currently associated with 105 medical schools, fifty-four dental schools, and more than 1,140 other schools across the United States. *Ibid.* In fact, over half of all practicing physicians in this country have had a portion of their professional education in the VA health-care system. *Ibid.* Approximately 100,000 health-care professionals train in VA medical centers each year. *Ibid.* In New Jersey, there are twelve facilities that provide

health-care services to veterans of the armed forces of the United States. All of them fall under the Veterans' Health Administration. They are the following:

***Outpatient Clinics***

1. Brick: James J. Howard Outpatient Clinic
2. Elizabeth: Elizabeth Health Practice
3. Hackensack: Hackensack Health Practice
4. Trenton: Trenton Health Practice
5. Ventnor: Ventnor Clinic
6. Vineland: Vineland Clinic

***Veterans Affairs Medical Centers***

1. East Orange: East Orange Campus of the VA New Jersey Health Care System
2. Lyons: Lyons Campus of the VA New Jersey Health Care System

***Veterans Centers***

1. Jersey City: Jersey City Veterans Center
2. Newark: Newark Veterans Center
3. Trenton: Trenton Veterans Center
4. Ventnor: Ventnor Veterans Center

The State of New Jersey, Department of Military and Veterans' Affairs, operates three veterans' homes, a veterans' cemetery and 18 veterans' services offices. The veterans' memorial home at Paramus is one of the three.

The relationship between the veterans' memorial homes and the Veterans' Administration is close. For example, *Fitzgerald's Legislative Manual,* 129–130 (Skinder–Strauss Associates, ed., 1998), states of the Veterans' Memorial Home in Vineland: "Residents [of the home] requiring more serious treatment are referred to area Veteran Administration facilities and local hospitals. The facility operates an out-patient Veterans' Administration Clinic on Wednesday of each week."

The notice provisions of the Tort Claims Act are well-suited to a fall on the steps of a courthouse or on an obstruction on a public sidewalk. *See Blank v. City of Elizabeth,* 162 *N.J.* 150, 742 *A.*2d 540 (1999) (holding that extraordinary circumstances were not present, although claimant did not speak English, given that

inspection of area within reasonable time following the accident would have led to prompt identification of the Elizabeth Water Department as the owner of the offending utility valve on which plaintiff had tripped). The problem lies in applying these simple concepts in more complex areas, such as medical malpractice or toxic tort causation. *See Lamb v. Global Landfill Reclaiming*, 111 *N.J.* 134, 543 *A.*2d 443 (1988) (holding under prior law that failure to file claim against public entities within the 90 days of accrual of their claims due to difficulties in identifying parties responsible for creating toxic conditions at landfill, in assessing severity of injuries, and in assessing toxicity of landfill, stated sufficient reasons for failure to comply with 90 day filing requirement). We find echoes of this case in our decision in *Feinberg v. DEP*, 137 *N.J.* 126, 644 *A.*2d 593 (1994). In that case a claimant had given timely notice to the wrong agency of State government. We found in the "singular context" of that case that notification to the Department of Environmental Protection was notification to the water authority involved. *Id.* at 135, 644 *A.*2d 593.

Although the Ventolas were perhaps not as sophisticated as one would wish in perceiving the differences between the agencies of government that provide services to veterans, their understandable confusion concerning the status of the veterans' home operated by the State Department of Military and Veterans' Affairs should not bar the presentation of their claim.

Two things are clear: (1) the dominant agency in providing veterans' benefits is the United States Department of Veterans' Affairs; (2) in every respect other than their appreciation of the role of the New Jersey Department of Military and Veterans' Affairs, the Ventolas were diligent in prosecution of their claims. They did not sleep on their rights and their conduct did not prejudice VMH in its defense of the case. We can be certain, as in *Lowe*, that the circumstances of this incident are fully documented in the records of VMH. And, as we understand the case, and note without deciding, there may be no fault on the part of VMH in that a preexisting condition of Samuel may have masked

the symptoms of the fracture. Finally, we observe that, after *Lowe,* this should be the last such occasion to apply its principles. Presumably, if State health-care providers wish to rely on the notice provisions of the TCA, they will have made their status clear to patients.

It is a paradox that health-care providers who have a duty to monitor the health of their patients should complain that they did not have notice that a patient's health had been harmed. In light of the harsh consequences of noncompliance, perhaps the Legislature will wish to revisit the issue of late notice under the Tort Claims Act in this context of State medical services and other more complex areas of causation. There is something unsettling about encouraging physicians to tell their patients at first treatment: "I am your doctor. I am an employee of the State of New Jersey. If you have reason to believe that I have treated you improperly, you have ninety days within which to make a claim against me."

The judgment of the Appellate Division is reversed. The matter is remanded to the Law Division for further proceedings in accordance with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices O'HERN, GARIBALDI, STEIN, COLEMAN and LONG—6.

*Opposed*—None.