942 A.2d 112 (2008)
398 N.J. Super. 449
Richard LEIDY, Plaintiff-Respondent,
v.
COUNTY OF OCEAN, Defendant, and
County of Monmouth, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 2008.
Decided February 28, 2008.
*114 Andres Y. Mejer, Neptune, argued the cause for appellant Monmouth County (Stout & O'Hagan, attorneys; Mr. Mejer, of counsel and on the brief).
Kenneth L. Thomson, Freehold, argued the cause for respondent Richard Leidy (Manning, Caliendo & Thomson, P.A., attorneys; Stephen M. Bacigalupo, on the brief).
Before Judges PARRILLO, GRAVIES[1] and ALVAREZ.
The opinion of the court was delivered by
PARRILLO, J.A.D.
"Defendant County of Monmouth appeals from the order of the Law Division denying its motion for reconsideration of a December 1, 2006 order granting plaintiff Richard Leidy's motion to extend the time to file a late Notice of Tort Claim pursuant to N.J.S.A. 59:8-9. For the following reasons, we reverse.
The salient facts are not in dispute. On December 25, 2005, plaintiff was in an accident while operating a motorcycle on County Route 537. The section of the road where the accident occurred is situated along, and forms the borders of, the Township of Jackson in Ocean County to the southeast, and the Township of Upper Freehold and Millstone in Monmouth County, to the northwest. The County of Monmouth maintains the portion of the road where the motorcycle crash occurred.
According to plaintiff, at the time of the accident, he was traveling eastbound on his 1998 Harley Davidson motorcycle, along with friends who were also operating motorcycles. They were riding two-by-two in a staggered formation, and he and a friend were in the lead. Suddenly, the traffic ahead began to stop and plaintiff and his companions applied their brakes. When the motorcycle to his left appeared to drift in his direction, to avoid a collision, plaintiff veered onto the three-foot wide paved shoulder of the road. The pavement, however, ended abruptly and the front tire of plaintiffs motorcycle caught a rut between the remainder of the paved shoulder and the unpaved dirt area. Plaintiff lost control and was thrown off the motorcycle after it crashed into a mailbox and eventually a telephone pole.
A Jackson Township police officer responded to the accident scene. In his report of the incident, Officer Seda noted that "[t]he section of [the] shoulder that makes the transition from 3' to 1' is washed out and drops approximately 4"-5" creating a hazzard [sic]. This condition is *115 what cause[d] [Leidy] to lose control of the bike." Officer Seda's report also stated that "Monmouth County Road Dept. was notified to make the repair."
Plaintiff, himself a resident of and police officer employed by Freehold Township in Monmouth County, was under the impression that since the accident occurred in Jackson, the property was controlled and maintained by Ocean County. Consequently, in anticipation of a personal injury lawsuit, on March 21, 2006, plaintiff's counsel, pursuant to the ninety-day notification requirement of the Tort Claims Act, N.J.S.A. 59:8-1 to -11, see N.J.S.A. 59:8-8, sent a notice of tort claim to the New Jersey Department of Law and Public Safety, the New Jersey Department of Transportation, Ocean County, and the Township of Jackson, but not to the County of Monmouth, which had exclusive jurisdiction over the roadway. Eight months later, on November 13, 2006, plaintiff filed a complaint against both Ocean and Monmouth counties, alleging negligent maintenance and inspection of the site of the motorcycle accident. Two days later, on November 15, 2006, plaintiff filed a notice of motion for leave to file a late Notice of Tort Claim upon Monmouth County. Because the County of Monmouth never received the motion, it was granted as unopposed by order of December 1, 2006, allowing plaintiff to file a late Notice of Tort Claim.
Upon receipt of the Law Division order and the late notice on December 18, 2006, defendant timely moved for reconsideration, vacation of the December 1, 2006 order, and dismissal of plaintiffs complaint. The motion judge denied this relief, essentially reasoning that the unique facts and circumstances of the case, including the failure of the parties originally noticed to claim otherwise, led plaintiff to reasonably believe that Ocean County and the Township of Jackson, rather than Monmouth County, had jurisdiction over the portion of the roadway in question, and further that the County of Monmouth was not prejudiced by any delay in filing the late notice.
On appeal, defendant principally argues that plaintiff failed to establish the requisite "extraordinary circumstances" justifying relief from the ninety-day statutory notification requirement, and that it will be "substantially prejudiced" by allowing the claim to proceed. We agree.
Claims against public entities are governed by the Tort Claims Act. N.J.S.A. 59:8-1 to -11. A party has ninety days from the accrual of his claim to file notice of a claim against a public entity. N.J.S.A. 59:8-8(a). This notice requirement was created:
(1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense; (3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and (4) to inform the State in advance as to the indebtedness or liability that it may be expected to meet.
[Moon v. Warren Haven Nursing Home, 182 N.J. 507, 514, 867 A.2d 1174 (2005) (quoting Beauchamp v. Amedio, 164 N.J. 111, 121-22, 751 A.2d 1047, (2000)) (internal quotation marks and citations omitted in original).]
There is an exception to the ninety-day notice rule. N.J.S.A. 59:8-9 provides:
A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion *116 of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.
[N.J.S.A 59:8-9 (emphasis added).]
Thus, although the decision to grant a plaintiff permission to file late notice of a tort claim "`is a matter left to the sound discretion of the trial court,'" R.L. v. State-Operated Sch. Dist., 387 N.J.Super. 331, 340, 903 A.2d 1110 (App.Div.2006) (quoting Ohlweiler v. Twp. of Chatham, 290 N.J.Super. 399, 403, 675 A.2d 1176 (App.Div.1996), overruled on other grounds by Beauchamp, supra, 164 N.J. at 120, 751 A.2d 1047), this "discretion is limited to cases in which the claimant's affidavit shows `sufficient reasons constituting extraordinary circumstances' for the delay and there is no `substantial[ ] prejudice[ ]' to the public entity or employee." Ibid. (quoting Ohlweiler, supra, 290 N.J.Super. at 403, 675 A.2d 1176) (alterations in original). Findings about "the lack of `substantial prejudice' and the presence of `extraordinary circumstances'. . . . must be expressly made in order to comply with the legislative mandate and to justify the entry of an order permitting the filing of a late notice of claim under N.J.S.A. 59:8-9." Allen v. Krause, 306 N.J.Super. 448, 455-56, 703 A.2d 993 (App.Div.1997).
The "extraordinary circumstances" requirement was not part of the original Act, sand mere "sufficient reasons" sufficed to warrant relief from the statutory time bar. Lowe v. Zarghami, 158 N.J. 606, 625, 731 A.2d 14 (1999). The "extraordinary circumstances" language was added by amendment in 1994, L. 1994, c. 49, § 5, in order to "raise the bar for the filing of late notice from a `fairly permissive standard' to a `more demanding' one." Beauchamp, supra, 164 N.J. at 118, 751 A.2d 1047 (quoting Lowe, supra, 158 N.J. at 625, 731 A.2d 14). "[T]he amendment may have signaled the end to a rule of liberality' in filing." Ibid. (quoting Lowe, supra, 158 N.J. at 626, 731 A.2d 14) (alteration in original). Notably, the 1994 amendment "`does not define what circumstances are to be considered "extraordinary" and necessarily leaves it for a case-by-case determination as to whether the reasons given rise to the level of "extraordinary" on the facts presented.'" Lowe, supra, 158 N.J. at 626, 731 A.2d 14 (quoting Allen, supra, 306 N.J.Super. at 455, 703 A.2d 993; Ohlweiler, supra, 290 N.J.Super. at 404, 675 A.2d 1176; O'Neill v. City of Newark, 304 N.J.Super. 543, 551, 701 A.2d 717 (App.Div.1997); Margolis and Novack, Claims Against Public Entities, Comment on N.J.S.A. 59:8-9 (1999)).
To justify his late filing in this case, plaintiff cites as "extraordinary circumstances" the fact that the County of Ocean never suggested "another public entity was responsible for the roadway." We do not view this circumstance under the present facts to be a sufficient, much less extraordinary, reason warranting relaxation of the time constraints of N.J.S.A. 59:8-8.
*117 Even before the 1994 amendment, when a more permissive standard governed, courts recognized that sufficient reasons could exist for the filing of late notice of claim based on misidentification of the responsible party only where a plaintiff had been thwarted in his or her diligent efforts to determine the responsible party or where the tortfeasor's identity had been actively obscured by the original defendants. Thus, in Zwirn v. County of Hudson, 137 N.J.Super. 99, 101, 347 A.2d 822 (Law Div.1975), plaintiffs counsel was mislead unintentionally by county police officers about the ownership of the road where plaintiffs decedent's accident occurred. Id. at 101, 347 A.2d 822. Finding that the belief of plaintiffs counsel was reasonable, though mistaken, because county police officers had advised him it was a county road, rather than a State road, and because the death involved an accident that was exhaustively investigated by the county police and county prosecutor, the court found that plaintiff had sufficient reasons to file a late notice of claim with the State. Id. at 104-05, 347 A.2d 822.
In Feinberg v. N.J. Dep't of Envtl. Prot., 137 N.J. 126, 129, 644 A.2d 593 (1994), the plaintiffs property was damaged after the Delaware and Raritan Canal overflowed. Plaintiff filed notice of a tort claim with the government agencies that she thought were responsible for the maintenance of the canal. Id. at 129, 644 A.2d 593. When she sought more specific information about the canal's true ownership and operation through timely discovery, the plaintiff was thwarted by the original defendants who failed to disclose the identity of the responsible public entity, the New Jersey Water Supply Authority, for two years beyond the accrual of the claim. Id. at 135, 644 A.2d 593. Moreover, the lease that made the Authority responsible for operation and maintenance of the canal was unrecorded. Id. at 131, 644 A.2d 593. In allowing plaintiffs claim to proceed, the Court concluded that the plaintiffs "problem was not that she failed to make reasonable efforts to ascertain the identity of such parties, but that the original defendants thwarted those efforts." Id. at 134-35, 644 A.2d 593.
In Dambro v. Union County Park Comm'n, 130 N.J.Super. 450, 327 A.2d 466 (Law Div.1974), the plaintiffs counsel sent a letter to the borough tax assessor describing the accident and requesting that he be informed about the owner of the property where plaintiffs accident occurred. Id. at 453, 327 A.2d 466. The tax assessor wrote back indicating that the property was owned by the Union County Park Commission. Ibid. It was only after plaintiff was served with the Commission's third-party complaint that he learned that Watchung owned the premises either in whole or in part. Ibid. Watchung moved to dismiss, but the court held that the plaintiff had substantially complied with N.J.S.A. 59:8-4 and 59:8-7 and that the borough was estopped from relying on the notice provision because the tax assessor had made a good faith mistake that misled the plaintiffs counsel concerning the borough's ownership. Id. at 457, 327 A.2d 466.
Post-1994 amendment cases, utilizing the more demanding "extraordinary circumstances" test, continued to insist that the identity of the proper party be "obscured" as a condition of relaxing the time bar of N.J.S.A. 59:8-8. Two medical malpractice cases are illustrative. In Lowe, supra, 158 N.J. at 629, 731 A.2d 14, the Court found that extraordinary circumstances existed for a patient who was justifiably unaware that her physician was a public employee. Id. at 629, 731 A.2d 14. The defendant, plaintiffs treating physician, was a clinical professor employed *118 by the University of Medicine and Dentistry of New Jersey (UMDNJ) but who practiced medicine at the Kennedy Memorial Hospital-Stratford Division, a UMDNJ-affiliated private hospital. Id. at 630, 731 A.2d 14. The Court found that the apparent status of the defendant as a private physician obscured his true status as a public employee. Id. at 629, 731 A.2d 14. Because the plaintiff had no reason to suspect that her doctor was associated with the UMDNJ and acted with diligence in pursuing her medical malpractice claim, the Court allowed the late notice of claim in light of the "extraordinary circumstances." Id. at 629-30, 731 A.2d 14.
In Ventola v. N.J. Veteran's Mem'l Home, 164 N.J. 74, 751 A.2d 559 (2000), plaintiff, a physically disabled, sixty-seven year old veteran of the U.S. armed forces, was a resident at New Jersey Veteran's Memorial Home (VMH) but was under the impression it was a federal hospital under the jurisdiction of the U.S. Department of Veterans' Affairs. Id. at 78, 751 A.2d 559. When the plaintiff and his wife sued VMH, alleging malpractice, they gave the U.S. Department of Veterans' Affairs proper notice of an administrative claim. Ibid. Shortly after the notice was filed, the Department of Veterans' Affairs informed plaintiffs that VMH was operated by the State of New Jersey. Ibid. Plaintiff then filed a notice of motion to file a late notice of a tort claim. Ibid. In a certified statement, plaintiffs wife stated "that she believed that the facility was owned and operated by the federal government . . . because the facility [was] exclusively operated for veterans and because Pentagon officials were regularly at the facility." Id. at 79, 751 A.2d 559. On the other hand, the Ventolas had both signed a number of documents that identified the home as operated by the State of New Jersey. Ibid. Nevertheless, in permitting the late notice of tort claim, id. at 83, 751 A.2d 559, the Court found "(1) the dominant agency in providing veterans' benefits is the United States Department of Veterans' Affairs;" (2) the relationship between the veterans' memorial homes and the Veterans' Administration is close; and (3) "in every respect other than their appreciation of the role of the New Jersey Department of Military and Veterans' Affairs, the Ventolas were diligent in prosecution of their claims." Id. at 82, 751 A.2d 559.
Of course, as the Court itself noted in Ventola, for purposes of applying the "extraordinary circumstances" standard, there is a fundamental difference between on the one hand the "more complex areas [of] medical malpractice or toxic tort causation" and on the other hand, "a fall on the steps of a courthouse or on an obstruction on a public sidewalk," to which "[t]he notice provisions of the Tort Claims Act are well suited[.]" 164 N.J. at 81-82, 751 A.2d 559. Thus, in Blank v. City of Elizabeth, 162 N.J. 150, 742 A.2d 540 (1999), the Court held that extraordinary circumstances were not present, although the claimant did not speak English, given that an inspection of the area within a reasonable time following the accident would have led to prompt identification of the Elizabeth Water Department as the owner of the offending utility valve on which plaintiff had tripped. Id. at 152-53, 742 A.2d 540.
Absent here is the dilatory conduct present in Feinberg, or the official's misrepresentation in Zwirn and Dambro, or the obscuring of complex technical or legal facts such as public employee status, Lowe, or the status of federal-state jurisdiction, Ventola. Rather, the present matter is much more akin to the issue of the ownership of the offending utility valve on which the plaintiff tripped in Blank. As in that case, reasonable investigation within a reasonable *119 time following the accident would, no doubt, have led to prompt identification of the County of Monmouth as the responsible party. Most significant on this score, the police report itself strongly suggests that Monmouth County may be responsible for repairing the condition supposedly causing plaintiffs injury. See Pilonero v. Twp. of Old Bridge, 236 N.J.Super. 529, 566 A.2d 546 (App.Div.1989). In Pilonero, the plaintiffs were injured in a car crash on a public road, but failed to timely notice any public entities. Id. at 537, 566 A.2d 546. In disallowing the plaintiffs claims under N.J.S.A. 59:8-9, we held:
the police report of the accident states that Pilonero advised [the police] that he lost control of his vehicle on the icy roadway and skidded into the northbound lane. The report also indicates that the road was icy and unsanded. Plaintiffs must therefore be charged with knowledge of the possibility of liability of the entities.
[Ibid.]
Here, not only is plaintiff charged with knowledge of Monmouth County's potential liability, but there is no thwarting by the original defendants of any efforts by plaintiff to discover that actual fact. And, although plaintiff complains that Ocean County and Jackson Township never claimed that another public entity may be liable, the fact of the matter is that plaintiff filed his notice of tort claim only a few days short of the ninety-day deadline and could not have reasonably expected Ocean County or Jackson Township to have responded within that abbreviated time period.
The issue then boils down to whether plaintiff was diligent and made reasonable efforts to discover the identity of the true tortfeasor. As defendant argued at its motion for reconsideration:
the police report clearly indicates and provides at least a diligent party would investigate and look into and file the motions. In addition, as we indicated, the situs of the accident was right on the boundary line between Ocean County and Monmouth County. Just looking at the map, a diligent party would notify both counties. That was not done in this instance.
Regardless of what an official map would have revealed, the record is barren of any reasonable efforts undertaken by plaintiff during the ninety-day period to ascertain ownership, control or operation of the portion of the roadway and adjacent area in question. Equally lacking is any explanation as to how or when plaintiff actually acquired knowledge of Monmouth County's jurisdiction.
Of course, the absence of such explanation or proof of due diligence in the record precludes plaintiff from satisfying N.J.S.A. 59:8-9's other requirement that a claimant file a late notice of tort claim within "a reasonable time." See, e.g., Epstein v. State, 311 N.J.Super. 350, 356, 709 A.2d 1353 (App.Div.), certif. denied, 155 N.J. 589, 715 A.2d 992 (1998); Wood v. County of Burlington, 302 N.J.Super. 371, 380, 695 A.2d 377 (App.Div.1997).
For instance, in Wood, plaintiffs' decedent died on December 2, 1994 after "a struggle with Florence Township police officers." 302 N.J.Super. at 373, 695 A.2d 377. On March 1, 1995, plaintiffs served notice of a tort claim on Florence Township. Id. at 374 695 A.2d 377. That same day, the township administrator sent plaintiffs a copy of the official Township notice claim form. Ibid. This specially required form was used pursuant to N.J.S.A. 59:8-6, which allows a public entity to adopt its own "forms specifying information to be contained in claims filed against it or its employee." Florence *120 Township did not hear from plaintiffs again "until December 1, 1995 when plaintiffs moved in the Law Division for an order declaring that their previously filed and served notice of tort claim was sufficient at law or in the alternative permitting [them] to file a late notice of claim in accordance with N.J.S.A. 59:8-9." Id. at 374, 695 A.2d 377 (quotations omitted) (alteration in original). The trial court granted the plaintiffs leave to file a late motion, but we reversed, finding that "plaintiffs did not show any reasons, let alone extraordinary reasons, for failing to file the statutorily mandated claim form within the period of time provided by N.J.S.A. 59:8-8 or for failing to move for leave to file a late notice of claim within a reasonable time thereafter." Id. at 378, 695 A.2d 377. We further found that "plaintiffs have not shown any reason why they could not have moved for leave to file a late notice of claim within a reasonable time after receiving Florence Township's letter advising them of the status of their claim and the requirements for proper presentment of a tort claim." Id. at 380, 695 A.2d 377. Finding the trial court had abused its discretion, we concluded that "No allow plaintiffs' claim under the circumstances presented in this case would render meaningless the purpose of the 1994 amendment to N.J.S.A. 59:8-9." Ibid.
Here, eight months elapsed between the March 2006 notice and the November 2006 notice of motion to file a late claim, yet no explanation is offered for the delay other than the assertion that plaintiff was simply not aware that Monmouth County controlled the roadway. Inasmuch as this excuse does not suffice to establish "extraordinary circumstances," neither does it render reasonable the delay in filing plaintiff's motion to file a late claim.
Finally, it appears Monmouth County may be substantially prejudiced if plaintiff's lawsuit is allowed to proceed. To bet sure, a delay in notice, by itself, is not enough to "give rise to the assumption of prejudice" and a "public entity must present a factual basis for the claim of substantial prejudice." Escalante v. Twp. of Cinnaminson, 283 N.J.Super. 244, 253, 661 A.2d 837 (App.Div.1995). There, we found substantial prejudice to the Township because it
received scant information regarding how and where plaintiff was injured. Plaintiff's affidavit fails to specify on which of the three courts he fell. Without such information regarding the exact location of the alleged depression, taken together with the assertion that the court's surface has greatly changed since the time of the accident because of the weather, plaintiff has failed to show that the Township will not be substantially prejudiced by allowing plaintiff's late filing. On the contrary, the Township's failure to receive timely notice may well prevent it from ever being able to adequately investigate plaintiff's claim because of changes to the court's surface that have occurred through no fault of the Township. Consequently, the trial court erred when it found that the Township would not be substantially prejudiced by the late filing.
[Ibid.]
Here, because of the late notification, defendant claims to have been unable to adequately investigate the accident scene close in time to occurrence of the motorcycle crash and to ascertain site conditions then extant. Indeed, the condition of the weathered "rut" on unimproved property off the side of a paved road has likely changed in the nearly one year lapse due to the effects of time and weather, making reconstruction impossible. Thus, even assuming plaintiff's excuse qualifies as an "exceptional circumstance," the prejudice *121 to defendant's defense of plaintiff's claim is both real and substantial, warranting dismissal of plaintiff's tort claim against defendant.
Reversed and remanded for entry of an order dismissing plaintiff's complaint in accordance with this opinion.
NOTES
[1] Judge Graves did not participate in oral argument. However, the parties have consented to his participation in the decision.