**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0127-25

ESTATE OF ETHAN SCOTT and
FELICIA SCOTT, individually,

     Plaintiffs-Respondents,

v.

STATE OF NEW JERSEY,
DEPARTMENT OF TREASURY,
BUREAU OF RISK MANAGEMENT,
STATE OF NEW JERSEY,
PENNSAUKEN TOWNSHIP,
BAYANDA HOME HEALTH CARE,
INC., NURSE HERBERT SMITH, and
WEST BERLIN BUS SERVICES,

     Defendants,

and

PENNSAUKEN PUBLIC SCHOOLS,

     Defendant-Appellant,

and

ROWAN UNIVERSITY,

     Defendant-Respondent.

Submitted May 11, 2026 – Decided June 18, 2026

Before Judges Natali and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1365-25.

Madden & Madden, PA, attorneys for appellant (Timothy R. Bieg, on the briefs).

Kline & Specter, attorneys for respondents Estate of Ethan Scott and Felicia Scott (Charles L. Becker, David K. Inscho, Ruxandra M. Laidacker, and Corrie Woods (Kline & Specter) of the Pennsylvania and West Virginia bars, admitted pro hac vice, on the brief).

PER CURIAM

Defendant Pennsauken Public Schools appeals from a Law Division order granting plaintiffs Estate of Ethan Scott (Estate) and Felicia Scott,[1] leave to file a late notice of tort claim under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to -12-3 and denying its subsequent motion for reconsideration. Based on our review of the record, we conclude the trial court misapplied its discretion when applying the necessary sequential analysis required under the TCA at N.J.S.A. 59:8-9. Therefore, we vacate the trial court's order granting

---

[1] We reference Felicia Scott as "plaintiff" and the Estate of Ethan Scott and Felicia Scott, when referenced collectively, as "plaintiffs" herein.

A-0127-25

plaintiffs' motion and remand for further proceedings consistent with this opinion.

## I.

On September 10, 2024, Ethan Scott, a fourteen-year-old student with special needs,[2] was picked up at his home in Pennsauken by defendant West Berlin Bus Company and accompanied by defendant Nurse Herbert Smith, an employee of defendant Bayada Home Health Care, to attend Archbishop Damiano School in Westville. An Individualized Education Program (IEP) developed by Pennsauken Public Schools, included transportation services be provided by West Berlin Bus Company and assigned a one-to-one nurse to monitor Ethan.

After school on September 10, Ethan returned home on the West Berlin bus, under the care of defendant Nurse Herbert Smith. Upon arrival, plaintiff, Ethan's mother, found him not breathing and called 911. Ethan was transported to Virtua Our Lady of Lourdes Hospital, where he was pronounced deceased.

---

[2] Ethan was classified as having "multiple disabilities" and diagnoses included cerebral palsy, hypoxic ischemic encephalopathy, thoracic insufficiency syndrome, mixed receptive-expressive language disorder, scoliosis, and global developmental delays. Additionally, he had a history of seizures, required constant medical supervision, and received nutrition through a G-tube.

A-0127-25

In the months following Ethan's death, plaintiff claims she did not possess Ethan's medical records, ambulance records, or autopsy report, and had no contemplation that any public entity might be responsible for Ethan's death. On March 7, 2025, plaintiff retained counsel to investigate potential claims relating to his death. Based on the investigation, including obtaining records and consulting with various experts, plaintiff identified several public entities that may have been liable for Ethan's passing. On March 17, 2025, plaintiffs filed notices of claim with the State of New Jersey, Pennsauken Township, Pennsauken Public Schools, Bayada Home Health Care, Inc., Nurse Herbert Smith, and West Berlin Bus Service. After being advised by the State that Rowan University may also be involved, plaintiffs provided notice to Rowan on April 17, 2025.

On April 23, 2025, plaintiffs moved for leave to file a late notice of tort claim against the identified public entities.[3] On June 19, 2025, following oral argument, the trial court granted plaintiffs' motion for leave to file a late notice of claim. The court summarized:

> I'm not granting this because I'm a hundred percent convinced that a tort claims notice shouldn't have been

---

[3] Plaintiff's motion assumed an accrual date of September 10, 2024, the date of death of Ethan, and that the ninety-day period for notice of claim under N.J.S.A. 59:8-8 expired on December 9, 2024.

A-0127-25

filed within ninety days. That's no[t] why I'm granting this. I'm granting this because the record before me understandably is woefully incomplete. I don't know why the child passed away. I don't know what the factual underpinning of the cause of action would be against anybody let alone Pennsauken . . . . And it seems to me without that information . . . I'm hamstrung in my ability to determine at this point that . . . the tort claims notice should have been filed.

Additionally, the court noted, "[t]his is without prejudice to any defendant filing a [Rule 4:6-2(e)] or a [Rule 4:46] motion in the future based upon plaintiffs['] failure to file a . . . tort claims notice within ninety days." The order also granted plaintiffs leave to provide "additional notice upon other parties after receipt and analysis of pertinent medical records."

Defendant moved for reconsideration, which was denied by the court on August 15, 2025. The court denied defendant's motion, without oral argument, stating:

> I denied the request for oral argument under Raspantini v. Arocho, 364 N.J. Super. 528, 532 [(App. Div. 2003)]. I'm denying the motion [for reconsideration]. There's already been a considerable amount of oral argument in this matter. . . . But whether I got it right or wrong, the matter has been briefed. There's been a lot of oral argument. We're . . . not doing it over and over again. If [defendant] thinks I'm wrong, they are always free, obviously, to file a motion for leave to appeal.

5

On appeal, defendant contends the trial court erred in granting plaintiffs' motion for leave to file a late tort claims notice outside of the ninety-day period required by the TCA. Specifically, defendant contends the court erred by determining plaintiffs demonstrated extraordinary circumstances justifying the late filing of the notice of claim and further erred by finding it would not be substantially prejudiced by plaintiffs' late filing.

## II.

The TCA waives the State's sovereign immunity but does so with certain requirements and limitations. See N.J.S.A. 59:1-2 (explaining that "public entities shall only be liable for their negligence within the limitations of this act"); see also Nieves v. Off. of the Pub. Def., 241 N.J. 567, 574-75 (2020). The "guiding principle . . . is that immunity from tort liability is the general rule and liability is the exception." Coyne v. Dep't of Transp., 182 N.J. 481, 488 (2005) (internal quotations omitted). Therefore, it "imposes strict requirements upon litigants seeking to file claims against public entities." McDade v. Siazon, 208 N.J. 463, 468 (2011).

N.J.S.A. 59:8-8, provides a claim "shall be presented . . . not later than the 90th day after accrual of the cause of action." It further provides that a claimant will be "forever barred" from recovery against a public employee or entity if the

6

claimant fails "to file the claim with the public entity within [ninety] days of accrual except as otherwise provided in N.J.S.A. 59:8-9." N.J.S.A. 59:8-8(a). The purpose of imposing this notice obligation upon a claimant is to give the public entity a fair opportunity to investigate the claim and potentially resolve it before the entity is put to the burden of having to defend a lawsuit at public expense. See Beauchamp v. Amedio, 164 N.J. 111, 121-22 (2000).

N.J.S.A. 59:8-9 mandates that,

> A claimant who fails to file notice of [their] claim within [ninety] days . . . may, in the discretion of . . . the Superior Court, be permitted to file such notice at any time within one year after the accrual of [their] claim provided that the public entity . . . has not been substantially prejudiced.

Further, any application to the court for permission to file late notice is required to be supported by "sufficient reasons constituting extraordinary circumstances" for failure to file within the prescribed ninety days. Ibid.

"Ascertaining the timeliness of a [TCA] notice requires a simple, three-step sequential analysis that never changes." McNellis-Wallace v. Hoffman, 464 N.J. Super. 409, 416 (App. Div. 2020). "The first step is to determine when the cause of action accrued in accordance with N.J.S.A. 59:8-1." Ibid. "Once the date of accrual is ascertained, one can proceed to the second step, which 'is to determine whether a notice of claim was filed within ninety days' as required

7

by N.J.S.A. 59:8-8." Ibid. (quoting Beauchamp, 164 N.J. at 118). "'If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice' under N.J.S.A. 59:8-9." Ibid. (quoting Beauchamp, 164 N.J. at 118-19).

The TCA does not exactly define the term accrual. Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 134 (2017); N.J.S.A. 59:8-1 ("Accrual shall mean the date on which the claim accrued"). A claim "accrues" under the TCA "on the date of the accident or incident that gives rise to any injury, however slight, that would be actionable if inflicted by a private citizen." Beauchamp, 164 N.J. at 123. "If an injured person is unaware that he or she has been injured or that a particular third party is responsible, the discovery rule tolls the date of accrual." Ibid.

The third step concerning "extraordinary circumstances" is typically determined "on a case-by-case basis," Rogers v. Cape May Cty. Off. of Pub. Def., 208 N.J. 414, 428 (2011), "with the outcome of each case depending 'on the facts presented.'" O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 347 (2019) (quoting Ventola v. N.J. Veteran's Mem'l Home, 164 N.J. 74, 77 (2000)). The phrase was implemented by our Legislature in 1994 to "raise the bar for the filing of late notice from a 'fairly permissive standard' to a 'more demanding'

A-0127-25

one."  Beauchamp, 164 N.J. at 118 (quoting Lowe v. Zarghami, 158 N.J. 606, 625 (1999)).

Given that legislative purpose, our courts have generally applied the exception in a stringent manner.  See, e.g., D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 156-57 (2013) (noting that "an attorney's inattention to a [client's] file, or even ignorance of the law," does not equate with "extraordinary circumstances" to justify a late filing); O'Neill v. City of Newark, 304 N.J. Super. 543, 552-54 (App. Div. 1997) (finding no extraordinary circumstances when plaintiff failed to file a notice within ninety days after being hospitalized due to a gunshot injury to his leg).

Further, "where discovering the identity of a responsible party is not thwarted by the original defendants, the issue becomes 'whether plaintiff was diligent and made reasonable efforts to discover the identity of the true tortfeasor.'" Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 533 (App. Div. 2010) (quoting Leidy v. Cnty. of Ocean, 398 N.J. Super. 449, 461 (App. Div. 2008)).  In addition to extraordinary circumstances, there must also be a showing that the public entity is not "'substantially prejudiced'" by the late notice. McDade, 208 N.J. at 477 (quoting N.J.S.A. 59:8-9).  "[T]he public entity [has] the burdens of production and persuasion on the question of prejudice."

9

Mendez, 416 N.J. Super. at 535. Generally, prejudice "implies the loss of witnesses, the loss of evidence, fading memories, and the like." Blank v. City of Elizabeth, 318 N.J. Super. 106, 115 (App. Div. 1999).

In its decision, the court found that decedent's date of death on September 10, 2024, was "probably" the accrual date. In addressing if plaintiffs showed extraordinary circumstances, the court found the issues were complex because of multiple entities being involved and plaintiff's difficulties understanding the legalities and how to obtain information before retaining counsel. The court determined plaintiffs had not "slept on their rights[, or] should have known a public entity was involved . . . ." The court also noted the lack of information about the cause of death and the fact that the autopsy report was not received until sometime after the child's death. The judge concluded:

> [T]he record before me understandably is woefully incomplete. I don't know why the child passed away. I don't know what the factual underpinning of the cause of action would be against anybody let alone Pennsauken . . . . And it seems to me without that information . . . I'm hamstrung in my ability to determine at this point . . . that the tort claims notice should have been filed.

The court also found there was no substantial prejudice to defendant, stating:

[P]rejudice doesn't mean well, you know, we lost x amount of months investigating the case. The defendants still have to show the witnesses who would have been available in the time period have vanished. Memories that would have been clearer, you know, four months ago, have dimmed. That type of stuff.

The court concluded: "there doesn't appear to be any substantial prejudice. That's my inclination."

The court later clarified:

[T]here's not a hint, H-I-N-T, of either prejudice or some tactical decision . . . in terms of the more "garden variety" prejudice, no critical witnesses as far as -- this could change too . . . if it turns out when Pennsauken investigates the matter if they . . . [determine] witnesses that were available within ninety days are no[w] unavailable. That could change things too. Because then you really do have prejudice.

We conclude the burden to show extraordinary circumstances rests on plaintiff in this instance. As defendant pointed out, at minimum, plaintiffs were aware of defendant's role surrounding Ethan's education program, including instituting an IEP, establishing his bus transportation services and the hiring of a full-time nurse to monitor him, which were all instituted by defendant as part of the child's educational services. The record also shows that Ethan may have passed while on the bus, which services were provided through defendant, while

11

under the supervision and monitoring by the nurse employed or hired by defendant.

After our review of the motion record, we conclude the trial court did not sufficiently address the facts supporting that plaintiff satisfied the sequential legal analysis set forth in McNellis-Wallace to be granted leave to file a late tort claims notice. As we previously noted, the "extraordinary circumstances" provision of the TCA was meant to be a high bar. Here, the record reflects that plaintiffs' justification to be granted leave to file a late tort claims notice is not completely clear. The record indicates that plaintiffs assert they were unable to obtain the appropriate documentation and medical records surrounding the circumstances of Ethan's death until counsel was retained in March 2025. In its decision, the trial court failed to provide specific reasons supporting that plaintiffs made diligent and reasonable efforts to discover the identity defendant as one of the true tortfeasors and why they were unable to obtain the medical records, documents and other proofs within the ninety-day period after the accrual date, which it had set as the child's date of death. We further note plaintiffs did not provide any explanation concerning the reasons they did not obtain these records within ninety days of the child's death under their authority as the administrator of the Estate or in her capacity as his parent and legal

12

guardian of the child.  The above factual and legal analysis was necessary for the court to make an appropriate determination in this instance.

Therefore, we remand to the trial court to provide specific factual findings based on the motion record:  (1) setting the accrual date for plaintiffs' claims; (2) whether plaintiffs provided sufficient factual and legal bases satisfying their burden showing exceptional circumstances; and (3) whether defendant provided a sufficient factual basis satisfying its burden to show it would be substantially prejudiced.

Vacated and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0127-25