**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1757-19

ESTATE OF KATHERINE
PERRY by and through its
administrator ad prosequendum
GREGORY ROMAN,

     Plaintiff-Respondent,

v.

APOORVA A. SINHA,

     Defendant,

and

COUNTY OF MIDDLESEX,[1]

     Defendant-Appellant.

Argued August 2, 2021 – Decided August 20, 2021

Before Judges Sabatino and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7299-19.

---

[1] Improperly pled as Middlesex County.

Lori A. Dvorak argued the cause for appellant (Dvorak & Associates, LLC, attorneys; Lori A. Dvorak, of counsel; Marc D. Mory and Grace E. Lempka, on the briefs).

Leonard D. Weiss argued the cause for respondent Estate of Katherine Perry (The Weiss Group, LLC, attorneys; Leonard D. Weiss, on the brief).

PER CURIAM

In this automobile accident case, defendant County of Middlesex appeals from a November 22, 2019 Law Division order, finding: (1) Katherine Perry[2] timely served her notice of tort claim (NOC) on the County in accordance with the requirements of the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 59:12-3, based on tolling of the accrual date; and, alternatively, (2) Perry demonstrated extraordinary circumstances under N.J.S.A. 59:8-9, thereby granting Perry's motion to serve a late NOC. For the reasons that follow, we vacate the order and remand for further proceedings.

We summarize the pertinent facts and procedural history from the limited record before the motion judge. On November 12, 2018, Perry and defendant Apoorva A. Sinha were involved in a motor vehicle accident at the intersection

---

[2] Perry died on March 10, 2020 after the motion judge entered the order under review but before the appellate briefs were filed. On August 9, 2021 we granted the Estate of Katherine Perry's motion to amend the caption. We use "plaintiff" to refer to the Estate, where applicable.

A-1757-19

of Inman and Grove Avenues in Edison.  According to the crash investigation report prepared by the responding officer, at the time of the collision Perry's car was traveling westbound on Inman Avenue, making a left turn; Sinha's car was traveling eastbound, heading "straight ahead."  Both drivers told the officer they were proceeding pursuant to "yellow" traffic signals.

In particular, according to the officer, Perry stated "her left-turn signal was yellow."  Because Perry is now deceased, we do not know whether she would confirm the officer's account of her quoted statement, although she did not file a certification in support of the motion refuting it.

According to the report, the officer

> watched the rotation of the traffic signals on Inman Avenue at the [i]ntersection of Grove Avenue, and . . . found that the left-turn signal does not turn yellow.  The left-turn signal for drivers traveling west on Inman Avenue is green for only a few seconds.  The green arrow does not change to any other color during the cycle.  Therefore, [Sinha] had the right of way.

The report does not state that the officer advised Perry of her conclusion.  There also is no indication that she issued Perry a traffic summons.

On a date that is not disclosed in the record, Perry obtained the police report.  According to the certification of plaintiff's attorney, on July 19, 2019, Perry retained counsel for assistance with her unpaid medical expenses arising

3

from the accident and provided the police report to counsel. On August 6, 2019, counsel obtained a video of the traffic signal at issue, which corroborated the officer's investigation.

Two days later, on August 8, 2019, counsel submitted a request pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, for the "traffic signal plan" and related documents. After receiving a response to the OPRA request on August 28, 2019, Perry's attorney retained Alexander Litwornia, a traffic engineering expert.

Ultimately, on September 25, 2019, Perry "was made aware" of Litwornia's opinion that pursuant to the Manual on Uniform Traffic Control Devices (MUTCD), a yellow signal was required "in between the green to red signal at the subject intersection." On October 10, 2019, Perry's attorney filed an NOC with the County, followed by a motion to file a late NOC on October 25, 2019. Perry's motion was supported by the certification of counsel, but she did not file her own sworn statement.

In an oral decision at the conclusion of argument on November 22, 2019, the judge granted Perry's motion. In doing so, the judge found the police report lacked "clarity" as to "the sequencing of the traffic control device and . . . the obligation of the County to have maintained the traffic control device in

accordance with the requirements of the [MUTCD]." According to the judge, it was not reasonable for Perry "to have discovered the potential for liability against the County within . . . the requisite ninety-day timeframe." The judge therefore set an accrual date of September 25, 2019.

As an alternate means of granting relief, the motion judge determined "extraordinary circumstances" existed for the late NOC here based on the totality of the circumstances, including Perry's "ability to acquire the information and then acquire the knowledge through the use of an expert." The judge also found because the accident was committed less than one year prior to the filing of the NOC,[3] the County was not "necessarily" prejudiced because it was obligated to maintain the traffic signal. The judge made no findings as to Perry's medical or other condition that would have prevented her from filing an NOC within ninety days of her receipt of the police report. After entering a memorializing order, this appeal followed.

On appeal, the County argues the motion judge erred in setting September 25, 2019 as the accrual date. The County also contends the judge erroneously found Perry demonstrated extraordinary circumstances to excuse the late NOC

---

[3] See N.J.S.A. 59:8-9 (prescribing an outer time limit of "one year after accrual of [the] claim").

filing.  In that context, the County asserts the record "lack[s] proof[] of diligence or reasonable effort by Ms. Perry to investigate the claim."  Plaintiff counters that the motion judge's decision is supported by the factual record.  Procedurally, plaintiff asserts the judge's determination of the accrual date is not a final order within the meaning of Rule 2:2-3(a)(3) and, as such, that ruling is not subject to our review.

As a preliminary matter, the portion of the order granting Perry's motion for leave to file a late NOC is a final order and, as such, appealable as of right. See R. 2:2-3(a)(3) (providing "[a]n order granting or denying a motion to extend the time to file a notice of tort claim pursuant to N.J.S.A. 59:8-9 . . . shall . . . be deemed a final judgment of the court for appeal purposes").  Plaintiff contends that part of the order granting Perry's motion to deem the late NOC timely is not a final order appealable as of right because it does not fall within the otherwise interlocutory orders Rule 2:2:-3(a)(3) defines as final for purposes of appeal.

We reject plaintiff's argument inasmuch as the motion judge's setting of accrual date is inexorably intertwined with the court's final order granting Perry's motion for leave to file a late NOC.  Indeed, determining the accrual date of a claim is the first step a trial judge must perform in determining the

A-1757-19

timeliness of the claim under N.J.S.A. 59:8-8. Beauchamp v. Amedio, 164 N.J. 111, 118-19 (2000) (holding trial judges determining the timeliness of a claim under N.J.S.A. 59:8-8 must perform a "sequential analysis":  first deciding when the claim accrued; then deciding if the NOC was filed within ninety days of the accrual date, and, if not, whether extraordinary circumstances justify the late notice).

Two standards of review guide our analysis.  Initially, the determination of the accrual date of a tort claim under the TCA is a legal issue solely within the province of the court.  See Jones v. Morey's Pier, Inc., 230 N.J. 142, 153 (2017) (recognizing in the absence of disputed facts, reviewing courts do not defer to the trial court's legal determinations).  Where, as here, the motion judge determined the accrual date based on its interpretation "of the law and the legal consequences that flow from established facts," we review its conclusions de novo. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Secondly, we review an order granting or denying a motion for leave to file a late NOC under the abuse of discretion standard.  O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 344 (2019).  "Although deference will ordinarily be given to the factual findings that undergird the trial court's decision, the court's

conclusions will be overturned if they were reached under a misconception of the law." D.D. v. Univ. of Med. and Dentistry of New Jersey, 213 N.J. 130, 147 (2013).

It is well-established that the TCA "provides 'broad but not absolute immunity for all public entities.'" Jones, 230 N.J. at 154 (quoting Marcinczyk v. N.J. Police Training Comm'n, 203 N.J. 586, 597 (2010)). The TCA's "'guiding principle' is 'that immunity from tort liability is the general rule and liability is the exception,'" O'Donnell, 236 N.J. at 345 (quoting D.D., 213 N.J. at 134). The statute circumscribes the procedures for initiating tort claims. Beauchamp, 164 N.J. at 116. The TCA requires that a plaintiff asserting tort claims against a public entity must first serve the entity with an NOC within ninety days of the accrual of the claim. See N.J.S.A. 59:8-8; see also O'Donnell, 236 N.J. at 345.

The TCA's requirements are "strictly construed." McDade v. Siazon, 208 N.J. 463, 474 (2011) (quoting Gerber ex rel. Gerber v. Springfield Bd. of Educ., 328 N.J. Super. 24, 34 (App. Div. 2000)). A plaintiff who fails to timely serve a notice of tort claim "shall be forever barred from recovering against a public entity." N.J.S.A. 59:8-8. The harshness of N.J.S.A. 59:8-8's ninety-day requirement, however, is in part alleviated by N.J.S.A. 59:8-9, which "permits a court to allow a plaintiff to file a late notice of claim under 'extraordinary

circumstances,' if the motion is made within one year of the accrual of the claim." Rogers v. Cape May Cnty. Off. of Pub. Def., 208 N.J. 414, 427 (2011). "After the one-year limitation has passed, the court is without authority to relieve a plaintiff from his [or her] failure to have filed a notice of claim, and a consequent action at law must fail." Pilonero v. Twp. of Old Bridge, 236 N.J. Super. 529, 532 (App. Div. 1989) (citation omitted).

To determine whether an NOC was timely filed in accordance with N.J.S.A. 59:8-8, a court must first find "the date on which the claim accrued." Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 133-34 (2017). N.J.S.A. 59:8-1 provides that under the TCA "[a]ccrual shall mean the date on which the claim accrued," but the TCA does not otherwise "define the date of accrual in any significant way." Beauchamp, 164 N.J. at 116. As the Court has noted, however, the comment to N.J.S.A. 59:8-1 explains that "the term accrual of a cause of action shall be defined in accordance with existing law in the private sector." Ibid. (citation omitted).

The Court has further recognized private sector law "holds that a claim accrues on the date on which the underlying tortious act occurred," and that the "same common law allows for delay of the legally cognizable date of accrual when the victim is unaware of his [or her] injury or does not know that a third

9

party is liable for the injury." Ben Elazar, 230 N.J. at 134. Accordingly, the Court has applied the discovery rule to determine the date of accrual of a claim under the TCA, and held that the accrual date "is tolled from the date of the tortious act or injury when the injured party either does not know of his [or her] injury or does not know that a third party is responsible for the injury." Ibid.

In the present matter, Perry sent her NOC to the County by certified mail on October 10, 2019,[4] nearly eleven months after her November 12, 2018 motor vehicle accident. The County contends Perry's NOC was untimely under N.J.S.A. 59:8-8 because – upon receipt of the investigating officer's police report – Perry was aware "that there was an issue with the light."

Plaintiff counters that the accident report fails to identify a "malfunction" sufficient to have placed Perry on notice of the County's potential liability because "[a] reasonable person exercising ordinary diligence would not be expected to know whether and when a yellow left turn arrow is required to be part of a traffic signal sequence." Plaintiff maintains that Perry discovered that

---

[4] It is unclear from the record when the County received Perry's NOC and whether the NOC was sent by regular mail. See N.J.S.A. 59:8-11 ("Proof of mailing may be made in the manner prescribed by the Rules of Court."). See also R. 1:5-4(b) (providing service by certified mail is deemed complete upon acceptance, in the absence of simultaneous ordinary mailing).

issue, which led to the identification of the County as a potential tortfeasor upon learning of Litwornia's expert opinion.

We have said "where discovering the identity of a responsible party is not thwarted by the original defendants, the issue becomes 'whether [the] plaintiff was diligent and made reasonable efforts to discover the identity of the true tortfeasor.'" Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 533 (App. Div. 2010) (quoting Leidy v. Cnty. of Ocean, 398 N.J. Super. 449, 461 (App. Div. 2008)). Here, the County did nothing to thwart plaintiff's efforts.

We agree with the County that the statements of Perry, Sinha, and the officer – as memorialized in the crash investigation report – were sufficient to place Perry on notice of an issue with the traffic control light. Both drivers stated they proceeded through the intersection when the traffic signal controlling their flow of traffic was amber, and the officer stated the left-turn signal controlling Perry's turning lane "does not turn yellow." Those contrary statements were sufficient to have placed Perry on notice that there was an issue with the traffic light requiring a "reasonable investigation within a reasonable time following the accident" to identify the County as a potential tortfeasor. Leidy, 398 N.J. Super. at 460; see also Iaconianni v. N.J. Tpk. Auth., 236 N.J. Super. 294, 297 (App. Div. 1989) (explaining reasonable diligence before

11

invocation of the discovery rule requires more than "a mere reading of the police report").

Based on our de novo review, we conclude the accrual date in this case was the date on which plaintiff received the police report, which apparently was the first time Perry was alerted to a problem with the traffic light signal. As the County acknowledges, however, that date is not contained in the record. We therefore remand the matter to the trial court to determine, if possible, the date on which the report was furnished to plaintiff and set that date as the accrual date. If the motion judge determines the accrual date is more than ninety days prior to Perry's October 10, 2019 NOC, the notice shall be deemed untimely under N.J.S.A. 59:8-8. On remand, plaintiff has the burden of proving the accrual date. See The Palisades at Ft. Lee Condo. Assoc., Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 454-55 (2017); see also Lopez v. Swyer, 62 N.J. 267, 275-76 (1973).

We therefore turn to the County's argument that the motion judge erroneously concluded plaintiff established extraordinary circumstances under N.J.S.A. 59:8-9 for service of the late NOC. Again, our review is hampered by the sparse motion record.

Under N.J.S.A. 59:8-9, a claimant can file a motion to submit a late notice of tort claim "within one year after the accrual of the cause of action," if there are "'sufficient reasons constituting extraordinary circumstances' for the claimant's failure to timely file" a notice of claim within the statutory ninety-day period, and if "the public entity [is not] 'substantially prejudiced' thereby." McDade, 208 N.J. at 476-77 (quoting N.J.S.A. 59:8-9). This requires a "fact-sensitive analysis of the specific case." Id. at 478. "The 'extraordinary circumstances' language was added by amendment in 1994 . . . to 'raise the bar for the filing of late notice from a fairly permissive standard to a more demanding one.'" Leidy, 398 N.J. Super. at 456 (quoting Beauchamp, 164 N.J. at 111 (internal quotation marks omitted)); see also D.D., 213 N.J. at 148.

In D.D., the Court held when "engaging in the analysis of extraordinary circumstances, the court's focus must be directed to the evidence that relates to plaintiff's circumstances as they were during the ninety-day time period, because that is the time during which the notice should have been filed." Id. at 151. The trial court cannot "substitute a lesser standard of proofs for the extraordinary circumstances demanded by the 1994 amendment to the statute itself." Id. at 148.

Other than the certification of Perry's attorney, stating that Perry provided the police report at their initial meeting on July 19, 2019, and Perry had "not consult[ed] other counsel prior to consulting with and retaining [his] office," the record does not reveal that Perry made any efforts upon receipt of the crash investigation report. There is no evidence, for example, that she suffered a medical or emotional condition as a result of the accident that was "severe, debilitating or uncommon." D.D., 213 N.J. at 150. She submitted no medical or psychological treatment records.

Nor was a certification of Perry filed explaining why she did not consult counsel for more than eight months after the accident or receipt of the accident report. See, e.g., Mendez, 416 N.J. Super. at 533 ("A key factor in determining whether a plaintiff acted with diligence in pursuing his or her claim is the promptness in contacting and retaining counsel to pursue plaintiff's rights."); see also N.J.S.A. 59:8-9 (emphasis added) (requiring "affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for [her] failure to file notice of claim within" ninety days of receipt of the accident report). We have previously observed that affidavits of counsel, containing objectionable hearsay, do not satisfy the statutory requirements. See S.P. v. Collier High School, 319 N.J. Super. 452,

465 (App. Div. 1999), abrogated on other grounds by Jones, 230 N.J. at 155-57.

Accordingly, we conclude Perry failed to meet the requirements of N.J.S.A. 59:8-9.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION